Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the Circuit court of the county of Elizabeth City, discharging a rule in the nature of a mandamus nisi, which had been awarded by said court on the petition of the plaintiff in error, R. P. Bunting, against the Hon. W. R. Willis, judge of the County court of said county, and Jerome Titlow, defendants in error, to show cause why a peremptory mandamus should not be awarded to the said plaintiff, commanding the said judge to admit or restore said plaintiff to his office of sheriff of said county, then held by the defendant Titlow.
Bunting having received the highest number of votes at the geueral election held May 27th, 1875, was elected sheriff of the county of Elizabeth city. On the 25th day of June 1875 he qualified as such before the said County court by taking the necessary oath, and giving bond, with approved security, as required by law, and on the 1st day of July 1875 he entered upon the duties of the office.
Afterwards, and during the same term of the said County court, to wit: on the 3d day of July 1875 the said Titlow, claiming to be sheriff of said county, moved the said court to set aside the order qualifying the said Bunting as such sheriff, entered into on the second day of the said term, and to declare the same null and void, together with the bond entered into by the said Bunting and his sureties, upon his qualification as said sheriff, upon the ground that he was at the time of said qualification, and was then incapable of holding the said office under the second section of chapter 11 of the Code of 1873. And the said Bunting appearing, and the said motion having been continued from time to time, afterwards during the same term, to *147 wit: on the 8th day of July 1875 the said County court,' on full consideration of the ease, being of opinion that the said order entered into, on the second day of the said term, was erroneously entered, and that the said Bunting was improperly and illegally admitted to qualify as sheriff of said county as aforesaid, and was not capable of holding said office of sheriff by reason of his holding an office of trust and emolument under the United States government, ordered that the order entered on the second day of the term as aforesaid should be set aside and annulled. And the said County court being further of opinion that said J eróme Titlow, as sheriff of the county, held over until his successor in office should legally qualify, ordered that the said Titlow should be recognized as such sheriff until his successor should qualify as aforesaid. To which ruling of the court the said Bunting excepted, and asked leave to file his bill of exceptions, which leave the court refused, upon the ground that his proper remedy was not by writ of error, but by mandamus or quo warranto.
Accordingly, the said Bunting applied to the judge of the Circuit court of said county for a rule in the nature of a mandamus nisi, which was awarded as aforesaid, and executed upon the defendants. After which, to wit: on the 30th of July 1875, the defendants filed the answer of Judge Willis to the said rule, to which answer the plaintiff, Bunting, filed a demurrer, and entered a plea, in which demurrer the defendants thereupon joined. The plea was, that the “part of the return to the mandamus nisi that alleges that the plaintiff held a United States office, to wit: the office of Deputy Inspector of Customs at Fortress Monroe, Virginia, an office of profit, trust and emolument, on the 2nd day of July 1875, or after he, the said plain *148 tiff, had entered upon the discharge of the duties of sheriff of Elizabeth City county, is not true.” Afterwards, to wit: on the 4th day of August 1875, the said Circuit court having fully considered the matters of law arising upon the plaintiff’s demurrer, was of opinion that said answer was sufficient, and overruled the demurrer thereto; and the plaintiff admitting the allegations of said answer not traversed by his said plea, issue was thereupon joined on said plea; and neither party requiring a jury, but submitting the matters of law and fact arising from the evidence and argument of counsel to the court, judgment was thereupon rendered against the plaintiff', discharging the said rule, and for the defendant’s costs; to which judgment the plaintiff excepted.
On motion of the plaintiff, and by consent of parties* a rehearing of the cause was granted; after which, to wit: on the 21st day of August 1875, the cause having in the meantime been further heard, and the court having taken time to consider, the court, on full reconsideration of the matters of law and fact arising in the case, and the arguments of counsel, confirmed the judgment entered in the cause on the 4th day of the same month.
In the bill of exceptions which was taken in the case by the plaintiff', the facts, or evidence proved on the trial, were certified.
The respondents (Judge W. E. Willis and Jerome Titlow), to maintain the issue on their parts, proved the following facts, to wit: “ That on the 25th day of June 1875, and for some time prior thereto, E. Paul Bunting held the office of Deputy Collector and Inspector of Customs at Eortress Monroe, Virginia; that the said office was and is an office of profit, trust and emolument, under the government of the United *149 States, paying to the incumbent thereof an income of four dollars per day as a salary; that on the 19th day of June 1875, the said Bunting sent in his resignation of said office, to take effect on the 30th of June 1875; that the said resignation was not accepted, or any official action indicating its acceptance taken, until the 2nd day of July 1875; that on the 2nd day of July 1875, about five o’clock in the afternoon of that day, William Webb, an employee of the United States Custom House at Norfolk, Virginia, under instructions of Luther Lee, Jr., Collector of Customs, relieved the said Bunting as United States Deputy Inspector and Collector of Customs at Fortress Monroe; that on the first day of July 1875, about 9 o’clock in the morning, the said Bunting, in the discharge of the said duties of the said office of deputy inspector and collector, cleared the American brig ‘Katahdin,’ and issued to her clearance papers over his signature and in the capacity of deputy inspector and collector of customs as aforesaid, having two days before commenced the papers of the clearance of said vessel.”
And the said B. P. Bunting, to maintain the issue on his part, proved the following facts by both oral and record testimony, to-wit: “ That on the 27th day of May 1875, he was duly elected sheriff of the county of Elizabeth City, and state of Virginia:” and here is inserted the certificate of said election. “ That on the 25th day of June 1875, he duly qualified as sheriff of said county, before the County court of said county, then in session, presided over by Judge W. B. Willis, the judge of said court, by taking the necessary oath, and giving the bond with approved security:” and here follows the order of 'qualification. “ That on the 1st day of July 1875, about the hour of 12 o’clock A. M., he took formal possession of the said office of *150 sheriff, and continued in the said office, performing the duties thereof, until the 8th day of July 1875; on that day one Jerome Titlow moved the said judge of the said court, through his counsel, to revoke-the order of the 25th day of June 1875, qualifying the-said R. P. Bunting as sheriff aforesaid; that upon argument and consideration the said judge of said court did revoke said order of qualification, and did dispossess him the said Bunting of the said office of sheriff':” and here follows the order of revocation. “That prior to, and at the time of his qualification as sheriff aforesaid, to-wit, on the 25th day of June 1875, he held the office of deputy inspector and collector of customs at Portress Monroe, Virginia; that after his election to-wit, on the 19th day of June 1875, he resigned the office of United States deputy inspector and collector, to take effect on the 30th day of June 1875:” and here follows the letter of resignation in these words:
“Custom House, Port Monroe, Va.,
Collector’s Office, June 19th, 1875.
Hon. Luther Lee, Jr.,
Collector of Customs, Norfolk, Va.:
Mv Bear Sir:—After five years of continued service as an inspector of the customs for the port of Norfolk, and under your personal supervision, I beg leave to hand my resignation, to take effect June 30th-1875.
Being one of the first to receive an appointment at your hands, on your assuming the position of the collectorship of the port above stated, it gives me pleasure to . say, that the past five years have been as. pleasastly and agreeably spent as any of my past life, and I assure you it is with much regret that I am *151 forced to hand you my resignation; but business of a private nature demands my immediate and personal attention, and I therefore beg you will be pleased to accept it in the same good feeling in which it was written.
You will be pleased to permit me to extend to you and the officers under you my sincere and hearty thanks for the many courtesies extended to me since my connection with you, both officially and socially.
"With best wishes for your future prosperity, I beg leave to remain your sincere friend and'ob’t servant,
E. Paul Bunting.”
Under which letter is a certificate, under the hand and official seal of the collector, dated July 5th 1875, that said letter is a true copy of the original on file in his office.
“That on the 28th or 29th day of June 1875, the papers of the American brig ‘Eatahdin’ were placed in his the said Bunting’s hands for clearance. That all the necessary papers, except the hospital returns and his signature as deputy collector, were made out and completed on the said 28th or 29th day of June 1875; that on the first day of July 1875, having two or three days previously commenced the clearing of the said brig ‘Eatahdin,’ he completed the said clearing; that this was about 9 o’clock A. M., and before he had done any act in the office of sheriff aforesaid; that on the 2nd day of July 1875, W. T. Webb took charge of the said office of United States deputy collector and inspector of customs, and continued to act as said officer until the 8th day of July 1875, when the said office was filled by H. Libby, duly appointed, and who holds the said office to this date.” And the said Bunting in his evidence states, “that from and *152 after nine o’clock A. M. of the 1st day of July 1875, he ceased entirely to have anything to do with the said office of deputy inspector and collector of customs at Fort Monroe, and that his damages, including his attorney’s fee in this case, amount to about $300.”
"Whereupon the court, being of opinion that the said Bunting was not entitled to recover the said office, gave judgment for the respondents; to which opinion the said Bunting excepted.
The Code, chapter 11, section 2, page 174, declares that “no person shall be capable of holding any” post of profit, trust or emolument, civil or military, legislative, executive or judicial, under the government of this commonwealth, “who holds any post of profit, trust or emolument, civil or military, legislative, executive or judicial, under the governent of the United States, or who receives in any way from ■ the United States any emolument whatever.”
It is not denied, and there can be no question, but that, first, the office of.sheriff is a post of profit, trust and emolument, under the government of this commonwealth; and, secondly, the office of deputy inspector and collector of customs at Fortress Monroe, Virginia, which was held by the plaintiff Bunting at the time of his election as sheriff of the county of Elizabeth City on the 27th day of May 1875, was a post of profit, trust and emolument, under the government of the United States; within the true intent and meaning, and indeed the express terms, of the said provision of the Code.
There is also a provision of the constitution of the State (article 7, section 6, Code p. 92), which declares that “sheriffs shall hold no other office.” This provision is no further material to this case, than to show the intent of the framers, as well of the constitution *153 as of the law of the state, that a sheriff shall hold no other lucrative office, whether under the state or federal government. We will therefore not notice any further the constitutional provision aforesaid.
When the plaintiff was a candidate for the office of sheriff’ under the state government he certainly held the office of deputy inspector and collector of customs under the federal government; and it does not appear that he had then any idea of resigning the latter office, at least unless he should be elected to the state office; in which event he may have intended to tender his resignation of his federal office, to take effect when he would have to enter on the duties of the state office. A question might well be raised, whether a person who holds a lucrative office under the federal government, is eligible to the office of sheriff under the state law. To be sure that law does not expressly declare that he shall not be eligible to, but only that he shall not be capable of holding, any such post, &c. We can see some reason for using the latter rather than the former language, as it may have been intended to have the effect of preventing, not only a federal officer from being elected to a state office, but also a state officer from receiving a federal office without ipso facto vacating bis state office. It may seem strange, that a person should be eligible to a state office, which he is incapable of holding after being elected. The law says nothing about his resigning before entering on the duties of his state office, any federal office which he may hold at the time of his election. It is at least optional with him, whether he will resign his federal office or not; and whether his election to the state office would be effectual or not, would depend on the contingency of his future *154 resignation in time to enter on the duties of the state Office.
The federal office might he held by fraud cotemporaileou8ly with the state office. We do not mean tQ' say that such was the case here; but there is danger in such a case. And the best way to guard against it would seem to be that the federal officer should not be eligible to the state office, until he has clearly and entirely rid himself of the federal office. Otherwise there will be a painful uncertainty after the election who the state officer is, until some unmistakable act of resignation shall have been executed. There is a manifest difference between offices held under the same government, and offices held under different governments, as under the state and federal. In the former-case, the whole matter is under the control of one and the same government, and the acceptance of one office is ipso facto a vacation of another, incompatible therewith, and previously received. But, in the latter case, an acceptance of a state office does not vacate a previously received federal office, however incompatible they may be. In the cases referred to in the argument, in which it has been held that a person holding one office may, while he holds it, be elected to another and incompatible one, seem to be all cases in which the offices were held under the same government.
But without expressing any opinion upon that question, and conceding, at least for the purposes of this case, that the plaintiff was eligible to the office of sheriff,, though at the time of the election, and for some time thereafter, he held the federal office, then the question arises, whether he was completely divested of the federal office before he was invested with the state office; in other words, whether he held both offices at one and the same time, however short may have been the time *155 of such holding. The law prescribes no limitation as to the time of holding. “Ho person shall be capable of holding” for an instant any more than for a year. The instant he holds a federal office he must cease to hold his state office.
The office of sheriff commenced on the first day of July 1875. Did the federal office cease before that day? Did he perform any duty of the latter office after or on that day ? This is the question we now have to consider and decide.
The plaintiff was elected to the office of sheriff on the 27th of May, and he tendered his resignation on the 19th of June thereafter. But it was not to take effect immediately. It was to take effect on the 30th of June 1875, the day before the term of the office of sheriff legally commenced. But did it then take effect? or was it held longer ? If it was held any longer, no matter how short the period, he was incapable of holding the office of sheriff'.
That he had a right to resign his federal office, and that such right does not depend upon the consent or acceptance of the government or its agents, seems to be very well settled. That after such a resignation becomes complete it cannot be withdrawn by the officer, even with the consent of the government, seems also to be settled, though he may receive a new appointment, which may perhaps be given to him in the form of a withdrawal by consent of his resignation of his former office.
But a prospective resignation may be withdrawn at any time before it is accepted: and after it is accepted it may be withdrawn by the consent of the authority accepting, where no new rights have intervened. This was held by the Supreme court of Indiana, in Biddle v. Willard, 10 Ind. R. 62, and seems to be a reasonable *156 principle. We have seen no case to the contrary, while there are other cases which tend to sustain it. 105, The State v. Hauss; 6 Cal. R. 26, The Peopie v. Porter. 56 Missouri R. 17, State v. Boecker.
The resignation of the office of deputy inspector and collector in this case was prospective; to take effect June 80th, 1875. It was not accepted by the collector until after that time. .There can be no doubt but that until that time it was competent for the plaintiff, at least with the consent of the collector, to withdraw his resignation, either entirely or for a limited period. From the terms of the letter of resignation, it is plain that the plaintiff would have consented to withdraw his resignation for a limited period or purpose, if the exigencies of the public service required it, especially if he supposed that he would not thereby lose his office of sheriff.
It clearly appears in this case that the plaintiff acted as deputy inspector and collector after the 30th of June, to wit: on the 1st of July 1875; and so acted with the consent of the collector. It is certified as a fact proved in the cause, “that on the first day of July 1875, about 9 o’clock in the morning the said Bunting? in the discharge of the said duties of the said office of deputy inspector and collector, cleared the American brig ‘ Katahdin,’ and issued to her clearance papers over his signature, and in the capacity of deputy inspector and collector of customs as aforesaid, having two days before commenced the papers of the clearance of said vessel,” This act could only have been done by withdrawing the resignation so long as was necessary for the purpose. In fact, the plaintiff did not go out of office before the 2d day of July 1875, it being certified as a fact proved on the trial, that “ about 5 o’clock in the afternoon of that day, William Webb, *157 an employee in the United States custom-house at Norfolk, Virginia, under instructions of Luther Lee, jr., collector of customs, relieved the said Bunting as United States deputy inspector and collector of customs at Fortress Monroe.” Thus it appears that Bunting went out, and Webb came into this office about 5 o’clock, P. M., on the 2d of July 1875, after the term of the sheriffalty for which Bunting had been elected commenced. It seems to be supposed that the facts certified, as proved by Bunting, are more favorable to him than those proved on the other side. But there is not any conflict between them, and if there were we would have to prefer that view of the facts which tends to sustain the judgment to that which tends to the contrary.
When was Bunting’s letter of resignation of the 19th of June 1785 received by Lee? Was any answer made to it? And if so, what was the answer? On none of these subjects does the record give any information. If Lee had answered the letter of Bunting, accepting the resignation as it was tendered, or containing anything else at all favorable to Bunting, it would have been produced by him. We may infer, therefore, from the non-production of such an answer, that it was not written or was not favorable. It does not appear that the letter of resignation was filed or received by Lee until the 5th of July 1875, the date of his certificate, which .was after the controversy in the County court for the office of sheriff between these parties had commenced, which was on the 3d of July. It is not stated by Bunting when his letter of resignation was actually written; and even the date of his resignation is stated under a scilicet, as on the 19th of June 1875. If Bunting received no answer from Lee stating that his letter of resignation was received and *158 filed, lie could not have considered his resignation as accepted and complete. It does not appear that he re-any such answer until after the 2d of July, on wfiich day, about 5 o’clock in the afternoon, Bunting was relieved by "Webb. Continuity of .the office seems to be required by public necessity. Even the short period of six days between the 2d and the 8th of July was filled up by the temporary appointment of Webb, an employee in the custom-house, and on the 8th the office was permanently filled by the appointment of Libby.
In this base, the most we can say for Bunting, even if we can say that, is that the case is a doubtful one upon the merits. So considering it, we would have to affirm the judgment, in conformity with the opinion of the County court and of the Circuit court, both of which courts saw and heard the witnesses, and the latter of which stood in the place of a jury by agreement of the parties, and after giving judgment for the respondents, on full argument and consideration, granted a rehearing, and then upon reargument and reconsideration affirmed the former judgment.
Upon every principle therefore, we must affirm the judgment of the Circuit court upon the merits.
But there are a few other questions, besides the merits, yet to be noticed, but little need be said of them—as,
1st. Was it competent for the County court, after Bunting had qualified and given bond as sheriff, during the same term, to set aside and annul his qualification and bond?
We think that it was. “The rule at common law is that during the term, whenever any judicial act is done, the record remains in the breast of the judges of the court and in their remembrance, and therefore the *159 roll is alterable during that term, as the judges shall direct; but when the term is past, then the record is in the roll, and admits of no alteration, averment or proof to the contrary.” 3 Tho. Co. Lit. 323.
Thus the rule on this subject, as taken from Coke, is laid down in 1 Bob. Pr. old ed. p. 638. In Cawoods ease, 2 Ya. Ca. 527, 545, the rule is more broadly laid down thus: “During the term, the records are in the breast of the court, and amendments may be made in the proceedings of the court; but after the term has passed, no amendments can be made, except of mere clerical misprisions.” The question we are now considering is governed by this rule.
2d. Was it competent for the County court to refuse to admit Bunting to qualify as sheriff when he held a lucrative office under the government of the United States ?
We think that it was, at least before he resigned his office under the United States; if indeed he was eligible while he held that office to the office of sheriff under the state government—a question which it is unnecessary now to decide. Certainly, after the court had been informed and satisfied that Bunting, having been elected as sheriff while he held a lucrative federal office, was actually engaged in performing its duties after the term of the sheriffalty had commenced, the court was well warranted in setting aside the order made at the same term of the court, admitting him to qualify as sheriff, and would then, at least, have been warranted in refusing to permit him to qualify. Surely the court has power and ought to refuse to permit a person to qualify therein to an office which he is incapable of holding. This is expressly recognized by a recent act of assembly approved March 29, 1875, Session Acts 1874-5, ch. 269, *160 section 5, p. 342, which, declares that if any person shall be elected to two or more of the offices enumerated in the section (one of which is that of sheriff), “his qualification in one shall be a bar to his qualification in any other, and they shall be filled as other vacancies.” Having qualified to one, of course the court in which the qualification would have to be made would refuse to permit him to qualify in the other. But, without considering this question any further, it is sufficient to say that the solution of the next seems to render it immaterial.
3. Whether the County court could properly have refused, or not, to permit Bunting to qualify as sheriff; or, having permitted him so to qualify, could,, afterwards, during the same term, properly set aside the qualification or not; it is very well settled, that if' Bunting is not now, and was not when he obtained a rule for a writ of mandamus, entitled to the office of sheriff, he cannot be admitted or restored to it on such writ.
In Chew v. The Justices of Spotsylvania, 2 Va. Cas. 208, it was held that the removal of a justice of the peace with all his family from his county to another, and remaining there for several years (although he after-wards returned), is either an abandonment, virtual resignation, or forfeiture of his office; and whether void, or only voidable by a judicial proceeding eventuating in a judgment of amotion, no mandamus ought to issue, to invest the applicant with an office not belonging to him, if void, or which might be taken from him, if voidable.
In Amory v. The Justices of Gloucester, Id. 523, it was held that the offices of deputy clerk of a County court and of a justice of the peace of the same county are incompatible offices, so that they cannot both be *161 held at the same time; and whether the acceptance of the office of deputy clerk vacates the office of a justice of the peace, or not, the Superior court will not a mandamus to compel the County court to admit the applicant to an office not belonging to him, if void, or which might be taken from him, if voidable.
In Poulson v. The Justices of Accomac, 2 Leigh. 743, it was held that a justice of the peace of the county of Accomac, who left this state with intent to establish his residence in another, and remained there nine months, but did not establish his permanent residence there, and then returned and resumed his former residence in Accomac, had no right to resume the exercise of his office of justice of the peace of Accomac. Upshur, J, delivered the resolution of the court, that the case was not distinguishable in principle from the ease of Chew v. The Justices of Spotsylvania, supra, and upon the authority of that case, the court was unanimously of opinion that the mandamus ought not to be awarded.
4. The remedy by mandamus seems to be a proper remedy in cases of this kind, and has been the one usually pursued, no doubt because, if not the only specific legal remedy, it was, at least, the most convenient and complete, in which cases the court exercises a sound discretion in granting or refusing the writ.
We think, therefore, the Circuit court did not err in discharging the rule for a writ of mandamus and refusing to award the said writ.
But one more observation occurs to us as proper to be made in this case; and that is, that Bunting having become incapable of holding the office of sheriff, at least by acting in his federal office after the term of his sheriffalty had commenced, he thenceforward at least ceased to be sheriff, and no act of his afterwards in throwing off the federal office could restore him to *162 the state office, nothing could do so hut a reelection and requalification to the latter. If it be necessary to cite authority in support of that principle, it may be found in the Commonwealth v. Sherrard, 4 Leigh 643; though it is no doubt sustained by many cases, if it be not a self-evident proposition.
Upon the whole, we think there is no error in the judgment, and that it ought to be affirmed.
Christian, J., dissented.
Judgment abbirmbd.