THE STATE, EX REL. BRUBAKER, *v.* HARDY ET AL., BOARD OF
EDUCATION OF ADAMS LOCAL SCHOOL DISTRICT, LUCAS COUNTY.

(No. 5856—Decided April 21, 1965.)

*Messrs. Gallon, Desmond & Lackey,* for relator.
*Mr. Harry Friberg,* prosecuting attorney, and *Mr. Robert Kopf,* for respondents.

BROWN, J. This is an action originating in this court for a writ of mandamus requiring respondents to execute a written continuing teacher contract on and after September 1, 1963. The relator, Gilbert Brubaker, is a teacher who had been employed by the respondents, the Board of Education of Adams Local School District, Lucas County, for four school years, 1960-1961, 1961-1962, 1962-1963, 1963-1964. In each of these school years relator was given a limited yearly teaching contract in contrast to a continuing contract.

The parties stipulated the following pertinent facts:

During the third school year of teaching, at a meeting of respondents on April 20, 1963, relator resigned as a school teacher in the respondents' school district effective May 29, 1963, the close of the third school year. This resignation was accepted by respondents on April 20, 1963, at the same meeting. At no time was this resignation withdrawn. At a meeting of respondents at a board meeting on June 15, 1963, after the close of the third school year, respondents rescinded the acceptance of relator's resignation. Respondents thereafter granted relator a limited yearly teaching contract for the ensuing school year 1963-1964, and relator taught that fourth school year. On September 1, 1963, relator was possessed of an eight-year professional certificate issued by the Department of Education of the state of Ohio, and from and after that date, September 1, 1963, relator has requested a continuing teaching contract which the respondents continually have refused. At no time subsequent to April 20, 1963, was relator nominated for reemployment by the county superintendent of schools.

During the fourth consecutive year of teaching for respondents, on March 30, 1964, relator was notified by respondents that he would not be re-employed for a fifth year, the 1964-1965 school year, on either a continuing or limited teaching contract. Respondents did not bring charges against relator or hold a hearing on relator's discharge, nor did relator request a hearing.

The legal question raised by these facts is this: Is the relator entitled to a continuing teaching contract on and after September 1, 1963, and a consequent writ of mandamus to enforce that right, or, on the contrary, did he have only a limited teaching contract for the fourth school year, 1963-1964, which entitled the respondents to follow the provisions of the limited yearly contract and terminate the contract at the end of the 1963-1964 school year?

This question requires the application and construction of the following pertinent parts of the statutes governing the employment of teachers.

Section 3319.08, Revised Code.

"* * * Contracts for the employment of teachers shall be of two types, limited contracts and continuing contracts. A limited contract for a superintendent is a contract for such term as authorized by Section 3319.01 of the Revised Code, and for all other teachers for a term not to exceed five years. A continuing contract is a contract which shall remain in effect until the teacher resigns, elects to retire, or is retired pursuant to Section 3307.37 of the Revised Code, or until it is terminated or suspended and shall be granted only to teachers holding professional, permanent, or life certificates."

Section 3319.11, Revised Code.

"Teachers eligible for continuing service status in any school district shall be those teachers qualified as to certification, who within the last five years have taught for at least three years in the district, * * *

"Upon the recommendation of the superintendent that a teacher eligible for continuing service status be re-employed, a continuing contract shall be entered into between the board and such teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. * * *

" * * *

"A limited contract may be entered into by each board with each teacher who has not been in the employ of the board for at least three years and shall be entered into, regardless of length of previous employment, with each teacher employed by the board who holds a provisional or temporary certificate.

"*  *  *

"The failure of a superintendent of schools to make a recommendation to the board of education under any of the conditions set forth in this section, or the failure of the board of education to give such teacher a written notice pursuant to this section shall not prejudice or prevent a teacher from being deemed re-employed under either a limited or continuing contract as the case may be under the provisions of this section."

Accordingly, relator, to be eligible for continuing-contract status, had to fulfill the following two requirements: (1) hold a professional, permanent or life certificate as required by paragraph four of Section 3319.08, Revised Code, as set forth above verbatim; and (2) within the last five years must have taught three years in the school district where a continuing contract is sought in accordance with paragraph one of Section 3319.11, Revised Code. These two requirements the relator met, and, consequently, relator was eligible for a continuing contract.

Relator did not have the specific recommendation of the county superintendent of schools for employment under a continuing service status for the fourth year of teaching, the school year of 1963-1964. Such a recommendation was not necessary for eligibility for continuing contract status. The amendment of Section 3319.11, Revised Code (129 Ohio Laws 1207), effective October 17, 1961, which added paragraph six set forth above, states that failure of the superintendent to make a recommendation shall not prejudice a teacher from being deemed re-employed under either a limited or continuing contract as the case may be. This amendment nullifies the decisions in the cases of *State, ex rel. Farley,* v. *Board of Education* (1959), 169 Ohio St. 388, and *State, ex rel. King,* v. *North Gallia Local Board of Education* (1963), 93 Ohio Law Abs. 358. These two cited cases hinged on the provisions of Section 3319.11, Revised Code, before its amendment on October 17, 1961, when the statute still required a condition that a continuing contract could be made with a teacher otherwise eligible for a continuing contract only after recommendation by a superintendent of schools that such a continuing contract should be executed.

The next question or inquiry is whether the relator had an absolute right to a continuing contract for the fourth school

year, 1963-1964, and thereafter. This requires consideration of the resignation submitted and accepted on April 20, 1963, and acceptance thereof rescinded by respondents on June 15, 1963.

The respondents obviously intended to nullify their acceptance of the resignation of relator by the board action of June 15, 1963, and further fortified this intention by re-employing relator for the next school year 1963-1964. In the intervening period from June 15, 1963, until the school year started in September, 1963, the respondents did not change their position, or cause new rights to intervene, such as obligating respondents to another contract by hiring another teacher to replace relator.

A resignation may be withdrawn after its acceptance by consent of the accepting authority, where no new rights have intervened. *Bunting* v. *Willis,* 68 Va. (27 Gratt.) 144, 21 Am. Rep. 338; 67 Corpus Juris Secundum 229; 43 American Jurisprudence 26; 82 A. L. R. 2d 751. No new rights intervened in the instant case. By analogy, if a resignation may be withdrawn after its acceptance by the consent of the accepting authority, there is even more force to the argument and reasoning that, after an acceptance of a resignation, acceptance of the resignation may be rescinded by the accepting authority, thereby nullifying its effect.

A prospective resignation can be withdrawn after it is accepted, with the consent of the accepting authority, where no new rights have intervened. *State, ex rel. Orr,* v. *Board of Edn.,* 23 C. C. (N. S.) 98 (see page 103 thereof), affirmed without opinion 87 Ohio St. 528; 82 A. L. R. 2d 753; 23 American & English Encyc. of Law (2d Ed.) 424; *Babbitt* v. *Shade,* 60 Ohio App. 100.

Further, to constitute a complete and operative resignation of a public officer, there must be an intention to relinquish part of the term of office, accompanied by an act of relinquishment. *State, ex rel. Staley,* v. *City of Lakewood,* 47 Ohio App. 519, cited in 82 A. L. R. 2d 753; *Babbitt* v. *Shade,* 60 Ohio App. 100.

Relator in the instant case did not relinquish his school teaching position with respondents, but, on the contrary, respondents proceeded to have relator teach a fourth consecutive year, the school year of 1963-1964, without interruption, **and**

without any effort by the respondents to replace relator for the fourth year. Accordingly, no new rights or obligations of either party intervened between May 29, 1963, and September 1, 1963. Further, this sequence of events and acts by both parties did not constitute an act of relinquishment of his teaching position by relator at the close of, and following, the school year 1962-1963.

The argument has also been made for respondents that relator, by executing a limited teaching contract on September 1, 1963, for the fourth year, 1963-1964, when he was then eligible for a continuing contract, waived his right to demand a continuing contract. This argument is based on the decision of the Supreme Court of Ohio in *State, ex rel. Ford,* v. *Board of Edn.* (1943), 141 Ohio St. 124, which held:

"A certified public school teacher, having been employed by a school board for more than five consecutive years, who, after the effective date of the Ohio Teachers' Tenure Act in 1941, voluntarily accepted a contract for the balance of the school year and at about the same time tendered her resignation operative at the close of such year, which resignation was accepted, is concluded thereby and is not thereafter entitled to a writ of mandamus directing such board of education to issue her a continuing contract under the first proviso of Section 7690-2, General Code."

However, the *Ford case, supra,* is distinguishable from the instant case because of the following factors present in the *Ford case,* not present pertaining to relator in the instant case, namely: (1) Relatrix, Ford, tendered a written resignation with, and as attempted consideration for, the execution of a limited contract for one year; (2) the prospective resignation was to be effective at the end of the school year for which relatrix obtained her last limited contract for one year; (3) relatrix obtained her last one year limited contract on September 29, 1941, after the school year had started; and (4) the respondent board, relying on the resignation delivered on September 30, 1941, effective at the close of the school year on June 20, 1942, hired another music teacher for the school year 1942-1943 to fill the position of relatrix, and there was then no available teaching position for relatrix.

On the contrary, Gilbert Brubaker, relator in the instant case, did not resign simultaneously with the execution of the last limited yearly contract and the resignation was not given as purported consideration for such contract. His resignation was not effective at the close of the last yearly contract, but at the close of the preceding school year; his last yearly contract was obtained before he started his last teaching year. The board did not rely on relator's resignation so as to fill the teaching position with another teacher for the school year following the effective date of the resignation.

Briefly, in the *Ford case, supra,* the respondent board had done something to its detriment in relying on the resignation, namely, made a teaching contract with another teacher, whereas, in the instant case, the board had taken no such contractual action pertaining to relator, Gilbert Brubaker, and had not changed its position as a result of the resignation.

When relator, Gilbert Brubaker, took his last limited contract for the school year, 1963-1964, protesting to the board and demanding then and thereafter that he was entitled—unlike the relatrix in the *Ford case, supra*—to a continuing contract, he did not covenant with the board that his services as a teacher would end, so far as the board was concerned, at the close of the school year 1963-1964.

A teacher eligible to a continuing teacher contract, by accepting and teaching under a limited one-year contract, does not waive his statutory rights to a continuing contract under the Teachers' Tenure Law by accepting and teaching under a one-year limited contract. *State, ex rel. Rose,* v. *Board of Education,* 74 Ohio App. 63, paragraph four of the syllabus; 1947 Opinions of Attorney General, No. 1767, 191 at 195; 1958 Opinions of Attorney General, No. 2856, 617 at 620; and 1952 Opinions of Attorney General, No. 1484, 414 at 416. This is the crux of the case and the rule of law applicable to the rights of relator, Brubaker, to a continuing contract for 1963-1964 and thereafter, and the rule of waiver involving a different factual situation in *State, ex rel. Ford,* v. *Board of Education,* 141 Ohio St. 124, is not applicable.

In *Allenbaugh* v. *City of Canton,* 137 Ohio St. 128, involving a civil service employee, it was held that before such em-

ployee may waive any right he has under the law, in order to establish a waiver, the evidence must be sufficient to warrant a court in saying that his intent to waive is unmistakable, and a right conferred by statute need not constantly be asserted in order to be preserved.

We come next to inquire whether the teaching contract of the relator for the school year 1963-1964 was employment or re-employment. Since relator had taught for the three consecutive years preceding the school year of 1963-1964, such 1963-1964 teaching was re-employment. Re-employment has reference to the continuation of a teacher in the position which he already holds. Or, synonymously, it is a rehiring after termination of the preceding contract. 1945 Opinions of Attorney General, No. 317, 324 at 331.

Since relator, Gilbert Brubaker, was rehired for the school year 1963-1964, that part of the second paragraph of Section 3319.11, Revised Code, excluding the clause concerning recommendation of the superintendent, is applicable and would, therefore, in substance read as follows:

"When a teacher eligible for continuing service status is re-employed, a continuing contract shall be entered into between the board and such teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent."

Therefore, a continuing contract is mandatory for relator for the school year 1963-1964 and thereafter in accordance with the second paragraph of Section 3319.11, Revised Code. For this reason, the writ of mandamus should be granted.

*Writ allowed.*

FESS, P. J., concurs.

SMITH, J., dissenting. The relator submitted a written resignation to the board effective at the end of the school year. The board formally accepted relator's resignation "as a first step toward his teaching in another school in our system." Later the board "rescinded" its acceptance of the resignation. The use by the parties of the word "rescinded" is inaccurate

under the circumstances. Referring to the words "rescind" or "rescission" it is stated in V Williston on Contracts (Rev. Ed.) 4063:

"In the Restatement of Contracts the words in question are used chiefly where the termination of the contractual relation is by mutual consent."

Relator herein did not enter into a mutual consent to a rescission of the acceptance of the resignation or his resignation, itself, but deliberately elected to leave his resignation on file with the board and did not withdraw the same. The unilateral action of the board was directed solely to a withdrawal of its acceptance and left the resignation stand as originally filed. With the resignation still on file with the board, relator voluntarily thereafter entered into a limited contract of employment for one year without any protest.

Any issue as to the application of the statute pertaining to the right of relator to a continuing contract of employment can be summarily dismissed since his teaching experience entitled him to such contract if, by his conduct, he has not waived such right. The facts and the decision in *State, ex rel. Ford,* v. *Board of Education,* 141 Ohio St. 124, 145 A. L. R. 1075 (referred to in 165 A. L. R. 1433 n) are consonant to the chief operative facts in the case before this court and should be controlling of a decision of this court denying the petition of relator for a writ of mandamus.

It is stated in the *Ford case, supra,* opinion by Zimmerman, J., as follows at page 127:

"However, subsequent to the effective date of the Teachers' Tenure Act, with the provisions of which relatrix must be presumed to have been familiar, she accepted from the respondent board a contract dating from September 29, 1941, and continuing only for the remainder of the school year, and, near the time of its issuance, also tendered her resignation as a teacher, effective June 20, 1942, to seek another position. Relatrix claims no fraud or misrepresentation in these transactions.

"While the respondents do not expressly plead waiver as a defense, the affirmative allegations of the answer certainly suggest it.

"The principle of law is well established that one is free to

waive the rights and privileges which are due him, whether secured by contract, conferred by statute, or guaranteed by the Constitution, so long as there is no violation of public policy. 40 Ohio Jurisprudence 1235, Section 3.

"When relatrix accepted without protest the limited contract of September 29, 1941, and likewise tendered her resignation, she covenanted with the respondent board that her services as a teacher would finally end, so far as the board was concerned, on June 20, 1942, and she should be bound by such conduct.

"Instead of demanding a continuing contract and standing on such demand, relatrix deliberately pursued another course, the effect of which was to relieve the board of education from tendering the continuing contract provided by statute.

"Mandamus is not a writ of right, but its issuance rests in the sound discretion of the court. *State, ex rel. Mettler, Pros. Atty., v. Stratton et al., Commrs.,* 139 Ohio St. 86, 38 N. E. 2d 393."

Thus, the case at bar, where the resignation of the relator was not withdrawn, and coupled therewith the acceptance, without protest of relator, of a limited contract of employment, presents facts which impel this member of the court to the conclusion that the relator is not entitled to a writ of mandamus for a continuing contract of employment and that the petition, therefore, should be denied. It should be noted that nothing in the majority opinion should be construed as a basis for any monetary award since there is no evidence in the record upon which the court could make such award.