# Richmond

## CHESAPEAKE AND OHIO RAILWAY COMPANY V. SWARTZ.

### November 20, 1913.

#### ON PETITION TO REHEAR JANUARY 15, 1914.

1. PLEADING—*Declaration—Assumption of Risk—Contributory Negligence.*—Assumption of risk and contributory negligence are matters of defense, and the fact that the plaintiff has not assumed the one or been guilty of the other need not be averred in the declaration. If, however, the declaration shows that the plaintiff has assumed the risk or been guilty of contributory negligence, it will be held bad on demurrer.

2. MASTER AND SERVANT—*Fellow-Servants—Railroads.*—By the express terms of section 162 of the Constitution of Virginia a railroad employee is declared not to be the fellow-servant of a co-employee in charge of a locomotive engine.

3. PLEADING—*Declaration—Bill of Particulars.*—Where a declaration states a good cause of action and the defendant desires a more particular statement of the grounds of complaint, he should demand a bill of particulars under section 3249 of the Code.

4. PLEADING—*Declaration—Allegation of Negligence—Disobedience of Rules.*—A count of a declaration which sets out in detail how the defendant had modified or partially abrogated one of its rules, and then substantially alleges that the injury complained of was occasioned by the negligent failure of the defendant to observe the rule as modified, states a good cause of action.

5. PLEADING—*Variance — Amendments — Continuance—Code, Section 3384.*—Where there is a variance between the allegations of the pleadings and the evidence, it is in conformity with section 3384 of the Code to allow the pleadings to be amended and, if need be, continue the case, and the practice is to be commended as promotive of substantial justice.

6. EVIDENCE—*Published Rules of Railroad—Partial Abrogation—Parol Evidence.*—It is entirely competent to show by parol that a printed rule of a railroad company had been modified or partially abrogated in its application to a particular yard of the company by those charged with its application and enforcement on that yard, and that its application in the modified form was the universal practice on that yard. This does not vary or contradict the terms of the rule nor submit its interpretation to the jury.

7. EVIDENCE—*Railroads—Personal Injury—Report to Company—Production.*—In an action against a railroad company to recover for a personal injury, the court may require the production by the defendant of a contemporaneous written statement of an employee concerning the injury complained of who was examined as a witness by the defendant. The statement is admissible for the purpose of impeachment if it contradicts the witness, and if it does not contradict, but corroborates him, then it is not prejudicial to the defendant.

8. RAILROADS—*Personal Injury—Negligence—Acts of Agent.*—The acts of the engineer and fireman of an engine, done in the presence and by the direction or at the request of a hostler who has taken charge of the engine on a railroad yard, and who knows that the train is protected by blue lights, are as much the acts of the hostler as if done by him personally.

9. APPEAL AND ERROR—*Verdicts—Conflict of Evidence—Plaintiff in Error.*—Where the evidence is conflicting the verdict of the jury settles the conflict, and the plaintiff in error occupies the position of a demurrant to the evidence.

10. APPEAL AND ERROR—*Personal Injury—Verdicts—Excessive Damages.*—Where a personal injury case has been fairly submitted to the jury on the law, and there is ample evidence to sustain the findings of the jury, their verdict, approved by the trial court, awarding the plaintiff $17,000 damages for a broken leg and other injuries and suffering, will not be set aside on appeal.

ON PETITION FOR REHEARING.

11. MASTER AND SERVANT—*Railroads—Rules—Construction—Modification.*—The allegation that a rule of a railroad company had been modified and partially abrogated by the company in certain designated particulars is not altered by the fact that the pleader has elsewhere spoken of the change as the construction of the rule habitually practiced and acquiesced in with the knowledge of the company.

12. MASTER AND SERVANT—*Negligence of Fellow-Servant—Virginia Constitution and Statute.*—A declaration in an action against a railroad company which charges that the relation of master and servant existed between the defendant and the plaintiff; that the plaintiff at the time of the injury was engaged in work on a car, and that the injury sustained was occasioned by the negligence of the hostler, a fellow-servant in charge of a locomotive engine, states a case for recovery by the plaintiff under section 162 of the Constitution and section 1294-k of the Code.

13.  MASTER AND SERVANT—*Safe Place—Injury to Car Repairer—Non-
     Assignable Duty—Negligence of Engineer—Proximate Cause.*—
     Independently of statute, the master owes to the servant the
     non-assignable duty of using ordinary care to furnish him a
     reasonably safe place in which to perform his work, and if
     the hostler in charge of a train directs an inexperienced fireman
     to back the engine in order to give slack for uncoupling, and
     he does it negligently, thereby injuring a repairer under the
     train who had given due notice of his presence, the master is
     liable.  The omission of the hostler to discharge his duty was, in
     legal contemplation, the proximate cause of the injury as be-
     tween the plaintiff and the defendant, and the negligence of
     the fireman was but a link in the chain of causation.  It is
     not the negligence of the fireman for which the company is
     liable, but the dominant negligence of the hostler, who was
     the defendant's *alter ego.*  For discussion of "proximate cause"
     see opinion of Whittle, J.

14.  MASTER AND SERVANT—*Injury to Car Repairer—Avoidable Injury—
     Instructions.*—In an action by a car repairer for an injury in-
     flicted on him by backing the engine attached to the car he
     was repairing after a blue light had been put on the car, indi-
     cating his presence, it is not error to refuse to instruct the
     jury "that if, upon the evidence, the plaintiff could have avoided
     the injury by waiting till the engine was uncoupled, he could
     not recover" where the undisputed evidence was that the plain-
     tiff went under the car in the proper discharge of his duty
     as car repairer, and also in obedience to the express command
     of the car inspector, whose orders he had been specifically
     directed to obey.

15.  INSTRUCTIONS—*Sufficiently Instructed.*—It is not error to refuse
     an instruction substantially covered by another instruction
     already given by the court.

Error to a judgment of the Circuit Court of the city of
Clifton Forge in an action of trespass on the case.  Judg-
ment for the plaintiff.  Defendant assigns error.

*Affirmed.*

The following instructions were given by the court:

AT THE REQUEST OF THE PLAINTIFF.

No. 1. The court instructs the jury that the law presumes

that the plaintiff, Swartz, was not guilty of contributory negligence and that he exercised due and proper care for his own safety; and if the defendant company relies on the defense that he would not have been injured but for his contributory negligence, then the burden of proof is on the defendant company to establish such contributory negligence of the plaintiff by a preponderance of the evidence unless such contributory negligence appears from the plaintiff's evidence, or can be fairly inferred from all the circumstances in the case.

No. 2. The court instructs the jury that if they believe from the evidence in this case that the defendant was guilty of negligence, as charged in the first, second, third, fifth and sixth counts of the plaintiff's second amended declaration, or guilty of negligence as charged in any one of said counts, and that such negligence of said defendant company was the sole proximate cause of the plaintiff's injury, then they ought to find a verdict for the plaintiff.

No. 3. The court instructs the jury that if they should find for the plaintiff, they may, in estimating his damages, take into consideration the physical and mental suffering of the plaintiff caused by his injury; his loss of wages for the time during which he was prevented, by said injury, from working; proper compensation for his being unable, because of his injury, to follow such a calling or business as he could otherwise have followed; and if they believe from the evidence that the plaintiff's injury is permanent, they are further instructed that, in estimating his damages, they may also take into consideration his probable duration of life, and to show this they may take into consideration the standard mortality tables as showing the probable duration of the plaintiff's life under all proof in this case.

### AT THE INSTANCE OF THE DEFENDANT.

A. The court instructs the jury that the burden of proof

is upon the plaintiff in this case to prove by a preponderance of the evidence to their satisfaction that the defendant was guilty of negligence, as stated in the declaration, and that this negligence was the sole proximate cause of the injury. He cannot recover if it is just as probable that the injury resulted from some cause for which the defendant was not responsible as for some cause for which it was responsible.

B. The court instructs the jury that it is their duty to try this case without being influenced by sympathy from the mere fact that the plaintiff was injured and has suffered, for the jury as much as the court are under the solemn obligation of an oath to decide according to the law and the facts. Without negligence on its part the defendant cannot be held liable, and even if the jury believes from the evidence that the defendant has been negligent, and if they further believe from the evidence that the plaintiff also was negligent, and that his carelessness contributed to any extent to his injury, he cannot recover against the defendant.

C. The court instructs the jury that the defendant did not insure or guarantee Swartz's safety. Its only duty was to exercise ordinary care for his safety. Ordinary care depends upon the circumstances of the particular case, and is such care as a person of ordinary prudence, under all circumstances, would exercise, and if the defendant used such ordinary care, it is not liable in case of injury.

On the other hand, Swartz's duty was to use ordinary care for his own safety—that is, such care as a man of ordinary prudence, under all circumstances, would exercise. And Swartz cannot recover, regardless of any failure of the defendant to use ordinary care (if the jury believe such failure on the part of the defendant appears from the evidence), if the jury believes from all the evidence that Swartz also failed to use such ordinary care and that his own imprudence contributed to the injury in any degree.

D. The court instructs the jury that if they believe from the evidence in this case that Swartz crossed over the train and walked east to the car next to the engine, where he met Inspector Deaton; that he knew that the engine had not been taken away from the train and did not inquire or ascertain whether or not the road engine had been uncoupled; that he knew, or should have known, that the blue light had been placed on the front of this car, between the car and the tender of the engine; that by the custom of the yard the road engine might be uncoupled and moved away at any time when the lights were so placed; and that in giving slack in the usual way to uncouple, the front car might be moved or jarred back by the engine, then the jury are instructed that the plaintiff took upon himself the risk of the injury he received and they must find for the defendant.

*J. M. Perry*, for the plaintiff in error.

*W. E. Allen* and *Charles and Duncan Curry*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

For convenience the defendant in error and the plaintiff in error will be called, respectively, plaintiff and defendant.

The second amended declaration contained seven counts, and there was a demurrer to the declaration as a whole and to each count. The circuit court sustained the demurrer to the fourth count and directed the jury to disregard the seventh count, and overruled the demurrer to the other five counts.

(1) The first and second grounds of demurrer to each of the remaining counts are that plaintiff assumed the risk of the alleged injury and was guilty of contributory negligence.

Assumption of risk and contributory negligence are mat-
ters of defense, and the fact that a plaintiff has not as-
sumed the one or been guilty of the other need not be
averred.  It is nevertheless true that where a declaration
affirmatively shows that the plaintiff has assumed the risk,
or been guilty of contributory negligence, it will be held
bad on demurrer, but that is not predicable of this declara-
tion.    *Penn Foundry Co.* v. *Probst,* 114 Va. 264, 76 S.
E. 323.

The third ground of demurrer is that the third and fifth
counts show that the alleged injury was occasioned by the
action of fellow-servants of plaintiff.

The gravamen of the averment in each of these counts
is that the hostler in charge of the engine, discovering
that he could not uncouple the engine from the train, as
it was his duty to do, until it was backed sufficiently to give
the necessary slack, with knowledge that the attached train
was protected by blue lights, and without warning to the
plaintiff, who was at work under the car nearest to the
tender, negligently passed an order to the fireman to back
the engine for the purpose indicated, which was done in
such a careless, reckless and unskillful manner as to oc-
casion plaintiff's injury.

By the express terms of section 162 of the Constitution
of Virginia a railroad employee is declared not to be the
fellow-servant of a coemployee in charge of a locomotive
engine.

The fourth ground of demurrer is that neither the
declaration, nor any count thereof, shows the neglect by
the defendant of any duty lawfully owing by it to the plain-
tiff, or any actionable negligence on the part of the de-
fendant.

To the contrary, it is alleged that the relation of master
and servant existed between the parties, and in varying
from the duty owing from the master to the servant and

the negligent breach of such duty, the defendant was guilty of negligence. *Hortenstein* v. *Va. Carolina R. Co.,* 102 Va. 914, 47 S. E. 996; *Cedar Works* v. *Dalea,* 109 Va. 237, 64 S. E. 41.

The fifth ground of demurrer is that the first and second counts do not set forth the matters discussed in the last preceding assignment with sufficient particularity and clearness to enable the defendant to understand the nature of the charge which it was called on to answer.

It is an established rule of practice in this jurisdiction that where a declaration states a good cause of action, and the defendant desires a more particular statement of the grounds of complaint, he should demand a bill of particulars under section 3249 of the Code. *Interstate R. Co.* v. *Tyree,* 110 Va. 38, 65 S. E. 500; *Washington-Virginia Ry. Co.* v. *Bouknight,* 113 Va. 696, 75 S. E. 1032.

The sixth and last ground of demurrer is that the material allegations of the second count are self-contradictory and repugnant.

This ground is not well taken. The count substantially alleges that the accident was occasioned by the negligent failure of the defendant to observe the terms of rule 26 with respect to the protection of trains by blue light signals in its modified or partially abrogated form, as set out in detail in that count. The binding effect upon the defendant of the partial abrogation of rule 26 will again be adverted to in considering the case on the merits.

(2) The second assignment of error is that the court at a former trial, having excluded evidence on behalf of the plaintiff for variance between the evidence and allegations, allowed the pleadings to be amended and continued the case.

This ruling was in conformity with section 3384 of the Code, and the practice is to be commended as promotive of substantial justice, and was without prejudice to the defendant.

(3) The next assignment of error presents the conflicting theories of plaintiff and defendant, involving the very right of the case. The contention of the defendant is that rule 26 (designed for the protection of workmen at work under or about a car, engine or train) is controlling, and being clear and unambiguous, its legal import is to be determined by the court, and that parol evidence was inadmissible to contradict or vary its terms.

This assumption is founded upon a misapprehension of the plaintiff's position. He does not seek to submit to the jury the interpretation of rule 26, nor to contradict or vary its terms. His proposition is that it is competent to allege and prove as a matter of fact that the printed rule in its integrity was never in force with respect to trains on the Clifton Forge yards, but that it had been modified or partially abrogated in regard to such trains. This was the object of the second count in the declaration, already noticed, and for that purpose the evidence, the admission of which is the ground of this assignment of error, was offered. In sustaining the theory of the plaintiff the circuit court was well within the decisions of this court. *Southern Ry. Co.* v. *Johnson,* 111 Va. 499, 69 S. E. 323; *N. & W. Ry. Co.* v. *Cofer,* 114 Va. 434, 76 S. E. 909.

The part of rule 26 applicable to the present controversy reads: "A blue flag by day and a blue light by night, placed on or at the end of a car, engine or train, denote that workmen are at work under or about the car, engine or train. The car, engine or train thus protected must not be coupled to or moved until the blue signal is removed by the person who placed it."

This rule was modified in the following particular: As soon as practicable after a train comes in on the yard at night, and while the engine is still attached, blue lights are to be placed on the rear end of the rear car and on the front end of the foremost car next to the tender, and not

on the front of the engine. As soon as these lights are placed in position it is the duty of the car inspectors and car repairers to commence work on the string of cars, the blue lights denoting their presence, and are intended for their protection, as indicated in rule 26. It was likewise the duty of the yard hostler, promptly on the incoming of a train, to take charge of the engine and uncouple it from the cars and take it to the round-house for inspection and repairs. If the blue light was placed at the head of the engine, instead of the front end of the car next to the tender, it would "tie it up" so that the hostler could not uncouple it until the blue light was removed. The modified rule was intended to expedite the business of the defendant on the yards, and by careful handling the necessary slack could be given and the engine uncoupled without endangering the safety of workmen under the cars, and this was the universal practice on the Clifton Forge yards.

(4) The next assignment of error denies the right of the trial court, on motion of the plaintiff, to require the production of a contemporaneous written statement of an employee concerning the accident who was examined as a witness by the defendant.

We do not think the trial court exceeded its authority in the premises. Such statement was admissible for purposes of impeachment—as much so as would have been the testimony of an impeaching witness that the employee had, on another occasion, made a contradictory statement. On the other hand, if the statement is not contradictory, but tends to corroborate the testimony of the witness, it would not be prejudicial to the defendant. The trend of modern practice is to relax rather than restrict the rule in regard to the admission of evidence in the effort to develop the whole truth of the matter under investigation.

(5) There was evidence to sustain the claim of the plain-

tiff that the hostler had assumed charge of the engine for the purpose of uncoupling it from the train preparatory to taking it to the round-house at the time he called on the engineer to give him slack, and he knew at that time that the train was protected by blue lights. In these circumstances in legal contemplation, the acts of the engineer and fireman, done in his presence and by his direction or at his request, were as much his own acts as if done by him personally.

(6) The verdict of the jury has set at rest the conflicting testimony of witnesses, and the case must be considered by this court as upon a demurrer to the evidence by the defendant. Considering the case from that viewpoint, the salient facts are these: At the time of the accident the plaintiff was a car repairer in the service of the defendant, doing night work on its upper yards at Clifton Forge. The yards contain numerous tracks running east and west, and the custom was for two inspectors and two car repairers to work each train as it came in. One inspector, with a car repairer, would take the south side of the train and work from east to west, while the other inspector and car repairer would work the north side from west to east. The inspectors examined each car for defects, and the repairers made such light repairs as they were ordered to make by the inspectors. When the plaintiff was employed as car repairer he was directed to report to the general foreman of car inspectors on the yards, by whom he was assigned to duty under Inspectors Deaton and Holland. He was told that they would instruct him as to his duties and the rules for his guidance, and that he must take orders from them and obey them. He was not given a book of rules, and never saw or knew of rule 26 until after the accident. The inspectors instructed him as to his duties and the terms of the rule as modified with respect to the placing of blue lights. During the entire term of his ser-

vice the above rule was in force and observed in the yards, and he had never known a train protected with blue lights, as prescribed by the rule, to be moved.  It was impossible for the hostler to uncouple the engine and tender from the front car without seeing the blue light.

On the night of the accident plaintiff was working under Inspector Deaton, when a freight train came in on the yards and stopped.  Deaton told him they would work that train from the south side, beginning at the end of the car next to the tender, and immediately placed a blue light on that end of the car on the south side.  In obedience to an order from Deaton, plaintiff went under the rear end of the front car to replace a yoke bolt.  It was necessary for him to go underneath the car to replace the nut, and to assume a sitting posture with his back toward the rear axle of the car.  While thus engaged the yard hostler came on the scene to take charge of the engine, and, discovering that the engine could not be uncoupled without slack, he went forward to the engine.  He found the engineer standing on the step of the engine in the act of stepping off on the ground.  The hostler told him to give him a little slack to cut the engine off; whereupon the engineer directed the fireman, who was still on the engine, to give the slack.  The fireman reversed the lever and turned on such a head of steam that the impact forced the front car back for a distance varyingly estimated at from six to fifteen feet.  There were thirty-odd iron cars in the train loaded with coal.  The violence of the collision was such that it threw plaintiff's right leg across the rail, and his jacket was caught under the wheel and so wound up that he was dragged a number of feet and well-nigh choked to death before he could be released.  But the chief injury was to his right leg, the bone of which was crushed and the flesh torn off one side.  He was in the hospital for seventeen months, and had since undergone six or seven operations

for the removal of diseased pieces of bone. The accident happened in April, 1910, and at the last trial, in July, 1912, there was a running sore on his leg; and some of the medical experts were of opinion, from the diseased condition of the leg, that amputation might still become necessary. Plaintiff had been compelled to give up work, his general health was impaired, and he continued to suffer great pain. Prior to the injury he was a robust young man, within a few months of attaining his majority, and with an earning capacity of from sixty-five to seventy dollars per month.

Without discussing the instructions, it is sufficient to say that the case was fairly submitted to the jury on the law, and their verdict awarding the plaintiff $17,000 was approved by the trial court. The assessment, it is true, is larger than usual in such cases, but there was ample evidence to sustain the finding, and, upon familiar principles, this court would not be warranted in disturbing the verdict.

We find no reversible error in the record, and the judgment must be affirmed.

UPON PETITION TO REHEAR.

WHITTLE, J., delivered the opinion of the court.

The rehearing in this case is prayed for on four grounds. The first and second assignments involve the affirmance by this court of the action of the circuit court in overruling the demurrer to the second and fifth counts of the second amended declaration:

1. The interpretation of the second count in the petition for a rehearing is that it attempts by construction and habitual practice, known to and acquiesced in by the defendant, to escape the operation of the unambigious language of printed rule No. 26.

The divergence of opinion between counsel for the defendant and this court results from a diversity of view as to the legal import of the language employed in that count. On the point in issue the court in its opinion observes:

"The count substantially alleges that the accident was occasioned by the negligent failure of the defendant to observe the terms of rule 26 with respect to the protection of trains by blue light signals in its modified or partially abrogated form, as set out in detail in that count. The binding effect upon the defendant of the partial abrogation of rule 26 will again be adverted to in considering the case on the merits."

The count charges substantially that it was the direction and practice of the defendant, whenever an engine and train came into its yard, for its car inspectors and car repairers to forthwith go about inspecting and repairing the cars; that shortly after the arrival of the train the engine was uncoupled and taken to the company's shops for repairs; that when the train in question came in the yard, it then became the duty of the plaintiff to do such repair work on the cars as he was directed to do, and, it being night, a blue light was placed at the rear end of the rear car of the train and a blue light on the front end of the car next to the engine and tender, and, when lights were so placed, the train of cars, under the rule, could not be moved without notice; that throughout plaintiff's term of service he had been informed and instructed by the defendant that this was the true construction or the habitual practice of the company for the protection of trains, and that construction or practice had been observed and acted on during his entire service as car repairer, and the defendant during that time had taken no steps to require any other observance of the rule.

The foregoing allegations are followed by the specific

averment that on the night of the accident the lights were placed by the defendant on the train in the manner described, and immediately thereafter the plaintiff received orders to go under one of the cars of the train and to replace a nut on a yoke bolt, and that while obeying that direction he received the injuries complained of.

It thus appears that in their essence the allegations of the count in no way involve the construction of rule No. 26, but, in substance, as the court in its opinion held, are the equivalent of a charge that rule No. 26 had been modified or partially abrogated by the defendant in the particulars mentioned. That fact having, in substance, been alleged, it is none the less an averment of a modification or partial abrogation of the rule because the pleader has elsewhere chosen to speak of the change as the construction of the rule habitually practiced and acquiesced in with the knowledge of the defendant. Moreover, the averment will not be overlooked that at the time of the accident a blue light was placed by the defendant on the front end of the foremost car of the train next to the tender and engine, and when so placed the plaintiff, in obedience to the defendant's order, went under the car and was injured.

2. The ground of demurrer to the fifth count of the second amended declaration is because no actionable negligence is set forth, nor the neglect of any duty lawfuly owing by the defendant to the plaintiff.

This point is pressed with so much confidence that it calls for special notice. We are told: "The gravamen of the count is that the hostler came to the engine and took it in charge, and when he went to the tender to uncouple it from the front car, found it could not be uncoupled without more slack; that the hostler, with knowledge of the inexperience of the fireman (who was still in the engine) in operating the engine, and with knowledge *'that the fireman was without authority to operate said engine,'*

47

negligently directed him to reverse the engine, which opera-
tion the latter performed so unskillfully that the plaintiff
was injured."

The gist of the argument is that the fifth count does not
allege that the hostler had any power, express or implied,
to delegate the performance of his duties, and that with-
out authority from the defendant he procured the assist-
ance of another employee, the fireman, who was incompe-
tent, and whose inefficiency caused the accident. *Taylor*
v. *B. & O. R. Co.,* 108 Va. 817, 62 S. E. 798, and *Board of
Trade* v. *Cralle,* 109 Va. 246, 63 S. E. 995, 22 L. R. A.
(N. S.) 297, 132 Am. St. Rep. 917, and outside authorities,
are cited for the proposition that the master is not liable
for the negligence of a person employed by his servant in
the prosecution of his master's business without authority,
express or implied, to procure assistance. We shall notice
these cases more in detail presently.

Let us, however, first consider whether or not the essen-
tial charges of the fifth count set forth actionable negli-
gence or the neglect of any lawful duty owing by the de-
fendant to the **plaintiff.**

The count charges that the plaintiff was employed by
the defendant as a car repairer, and while so engaged it
was the duty of the defendant to exercise reasonable care
for his safety; that on the night of the accident it became the
duty of the plaintiff to go under the front car of a freight
train of the defendant to do repair work before the engine
attached to the train had been uncoupled; that the place
where he had to work was a place of danger if the car
should be moved; that he went under the car to do repairs,
exercising due care and caution, "knowing that the yard
hostler, who had control of the said engine, knew, or ought
to have known, of his dangerous position. . . . The said
yard hostler, whose duty it was to uncouple the engine and
tender from said train and take charge of it, . . . took

the same in charge and saw and knew, or ought to have seen and known, that the said plaintiff was at work under said car in a dangerous place, and when he went to un-couple the engine and tender from the front car, he found that it could not be uncoupled without more slack, and the engineer who had been in charge of the said engine had left the engine, and the said hostler, who knew, or ought to have known, by the exercise of ordinary care, of the inex-perience of the fireman, who was still on the engine, in operating, running and controlling an engine, and that the fireman was without authority to operate said engine, carelessly and negligently directed the fireman to reverse the engine and back it, and the said fireman unskillfully and negligently put on a full head of steam and reversed the engine with such force that it ran the whole train of cars . . . back some distance," inflicting the injury of which the plaintiff complains.

The count is founded on the constitutional fellow-ser-vant provision (section 162) and the enabling act passed in pursuance thereof. Va. Code, sec. 1294-k.

The Constitution declares that every employee of a rail-road, engaged in work in or upon a car standing upon a track, "shall have the same right to recover for every in-jury suffered by him from the acts or omissions of any other employee or employees of the common master that a servant would have (at the time when this Constitution goes into effect) if such acts or omissions were those of the master himself in the performance of a non-assign-able duty; provided, that the injury so suffered by such railroad employee result from the negligence . . . of a coemployee engaged in another department of labor . . . or who is in charge of any . . . locomotive engine." *Va. & S. W. Ry. Co.* v. *Clowers' Admx.,* 102 Va. 867, 47 S. E. 1003.

The charges in the fifth count are explicit that the rela-

tion of master and servant existed between the defendant and the plaintiff; that the plaintiff at the time of the accident was engaged in work on a car, and that the injury sustained was occasioned by the negligence of the hostler, a fellow-servant in charge of a locomotive engine. The case, therefore, comes within the terms of the Constitution, which declares that in such circumstances the injured employee shall have the same right to recover for the acts or omissions of the hostler that he would have had at the time the Constitution went into effect if such acts or omissions had been those of the railroad itself in the performance of a non-assignable duty.

Independently, however, of the constitutional provision, the count states a good cause of action. The defendant owed the plaintiff the non-assignable duty of exercising ordinary care to furnish him a reasonably safe place in which to perform the work imposed upon him. And it devolved upon the yard hostler the duty of uncoupling the engine and tender from the car under which the plaintiff was doing repair work. The hostler negligently failed to discharge that duty, and as the result of such failure the plaintiff sustained personal injuries.

The plaintiff had no power to prescribe the agency through which the defendant should fulfill the duty of protection it owed him, nor was he in any way responsible for the acts or omissions of such agency. The act or omission of the hostler for which the defendant is responsible was his neglect to use ordinary care to properly uncouple the engine and tender from the train, and the means adopted by him which resulted in such failure did not concern the plaintiff. In legal contemplation, the omission of the hostler to discharge his duty was the proximate cause of the injury as between the plaintiff and the defendant, and the negligence of the fireman was but a link in the chain of causation. The court does not seek to hold the

defendant responsible for the negligence of the fireman, but for the dominant negligence of its *alter ego,* the yard hostler.

Bouvier in his Law Dictionary defines *proximate cause* as "that which in a natural and continuous sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred.

"The proximate cause is that which is most proximate in the order of responsible causation. *Butcher* v. *West Virginia & P. R. Co.,* 37 W. Va. 180, 16 S. E. 457, 18 L. R. A. 519; *Lutz* v. *Atlantic & Pac. R. Co.,* 6 N. M. 496, 30 Pac. 916, 16 L. R. A. 819. That which stands next in causation to the effect, not necessarily in time or space, but in casual relation. *Pullman Palace Car Co.* v. *Louck,* 143 Ill. 242, 32 N. E. 285, 18 L. R. A. 215; *Ins. Co.* v. *Boon,* 95 U. S. 130, 24 L. Ed. 395."

*"Causa causantis causa est causati"*—"the cause of the thing causing is the cause of the thing caused."

In *Aetna Ins. Co.* v. *Boon,* 95 U. S. 117, 24 L. Ed. 395, Mr. Justice Strong, delivering the opinion of the court, says: "The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental, or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

Again, the learned justice says: "The proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss."

There is nothing in the two decisions of this court, cited in the petition for a rehearing, in conflict with the foregoing views.

In *Taylor* v. *B. & O., R. Co.*, 108 Va. 817, 62 S. E. 798, the court held that "a mere request by a conductor of a freight train of an acquaintance to perform a casual service for his accommodation, which is responded to in the same sipirt of good-fellowship, without either promise or expectation of reward, does not constitute the person requested a servant of the railroad company, and it is not responsible for an injury inflicted on him in consequence of a defect in an appliance used by him while assisting the conductor. A volunteer cannot charge a railroad company with the duty of an employer."

And in *Board of Trade Co.* v. *Cralle*, 109 Va. 246, 63 S. E. 995, 22 L. R. A. 297, 132 Am. St. Rep. 917, the court held that "the owner of a passenger elevator is not responsible for an injury inflicted on a passenger by the negligence of an operator not employed directly or indirectly by the owner, but who was merely requested to operate the elevator for that trip by an 'office boy' of the owner, who had no power or authority, express or implied, to employ a servant for the owner. A master is liable for an injury inflicted on a third person by the acts or omissions of his servants while acting within the scope of their employment and in furtherance of it, but he is not liable as master where he does not occupy the relation of employer to the person whose neglignce occasioned the injury."

3. The third ground for a rehearing was the refusal of the prayer of the defendant for instructions "B" and "C."

Instruction "B" told the jury that if, upon the evidence, the plaintiff could have avoided the accident by waiting until the engine was uncoupled, he could not recover. Under the evidence this instruction was wholly unwarranted. The undisputed evidence was that the plaintiff went under the car in the proper discharge of his duty as car repairer, and also in obedience to the express com-

mand of the car inspector, whose orders he had been specifically directed to obey.

Instruction "C," that it was as much the plaintiff's duty to take care of his own safety as the defendant's, is substantially covered by another instruction which the court gave.

4. The last assignment goes to the *quantum* of damages awarded by the jury. Upon that proposition we shall content ourselves with the following summary taken from the brief of counsel for the plaintiff, which is fully sustained by the evidence:

"Swartz, when he was injured, was not twenty years of age, and was receiving between $65.00 and $70.00 a month. It was apparent that one so young, receiving wages at this rate, was in the line for promotion and increase of wages. He was injured on the 22nd day of April, 1910, and the verdict was brought in on the 5th day of July, 1912. Shortly before the trial, in June, 1911, he tried to work at light work in a cannery at $1.10 a day, and worked with great pain and suffering during that time, and at the end of three weeks could work no longer and stopped. From the time he was injured until the verdict, he had lost over $1,600 in wages, and had to be cared for and supported. It is reasonably sure that he will never be able to pursue the occupation of a railroad man. According to the tables of mortality in evidence, his expectancy of life was forty-two years, and if his loss, by reason of his injuries being of a permanent character, were estimated at $32 a month, less than half he was earning at the time he was injured, it would amount to $16,128.00.

"All the flesh was torn off his leg between the ankle and the knee, and the bones mashed and crushed up. The bones were wired up and set as well as they could be, and the flesh patched up with numerous pieces of flesh cut out of his thighs. He was then placed 'flat of his back' at the

hospital and his leg hung up for weeks, and the evidence shows that he suffered agonies from the pain.   He was confined in the hospital for seventeen months and had, during that time, six or seven different operations performed on his leg.   At the time of the trial his leg was a running sore and a loathsome and horrible sight to behold.   The appearance of his leg at the time could not be described.  The jury, court, counsel and everyone else took one look and then turned away with a shudder."

Upon these considerations the rehearing is denied.

*Affirmed.*