102  867|
105  114|

# Wytheville.

## VIRGINIA & SOUTHWESTERN RAILWAY CO. V. CLOWER'S ADMINISTRATRIX.

### JUNE 16, 1904.

1 CONSTITUTIONAL LAW—*Derogation of Common Law—Construction.*— The rule that statutes in derogation of the common law are to be construed strictly has no application to remedial provisions of a Constitution ordained for the purpose of relaxing the stringency of existing precedents in the interest of employees engaged in the dangerous occupation of constructing, maintaining, and operating railroads. Effect is to be given to the policy established by the Constitution, and to that end a fair interpretation is to be given to the language used, construing words in their common and ordinary acceptation, unless it clearly appears that they were intended to be used in some other sense.

2. CONSTITUTIONAL LAW—*Railroads—Fellow Servants—Engineer and Telegraph Operator.*—Under the provisions of section 162 of the Constitution (1902) of this State, a railroad company is liable for an injury inflicted on an engineer of a moving train, occasioned by the failure of a telegraph operator of the company to deliver to the conductor of such train a message from the train dispatcher.

3. CONSTITUTIONAL LAW—*Railroads—Transmitting Orders—Telegraph Operator.*—The object of a train dispatcher is to place in the hands of conductors in charge of trains proper and safe orders for their guidance. These orders emanate from the office of the train dispatcher, and their destination is the hand of the conductor of the train whose movements they are intended to direct and control. The order is in transit from the time it leaves the one until it reaches the other, and every agent of the company through whose hands the order passes is necessarily engaged in its transmission until it reaches its ultimate destination. An operator to whom such an order is sent by the dispatcher is an employee "charged

with dispatching or transmitting telegraphic or telephonic orders" within the meaning of section 162 of the Constitution of 1902. That section includes all agents of the company whose duty it is to transmit telegraphic or telephonic orders for the movement of trains to the conductors of such trains, no matter what instrumentalities may be employed for that purpose.

Error to a judgment of the Corporation Court of the city of Bristol, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Bullitt & Kelly* and *D. D. Hull,* for the plaintiff in error.

*E. Lee Trinkle, H. G. Peters* and *Wm. F. Rhea,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action of trespass on the case, brought by the administratrix of W. B. Clowers against the Virginia and Southwestern Railway Company, to recover damages for the alleged negligent killing of plaintiff's intestate by the defendant company. The jury rendered a verdict in favor of the plaintiff for $5,000, the judgment upon which is the subject of review.

It is conceded that plaintiff's intestate, who was a locomotive engineer in the employment of the defendant company, lost his life in a collision between two of the trains of that company, occasioned by the failure of its telegraph operator at Big Stone Gap to transmit, or deliver, an order sent out from the train dispatcher's office at Bristol to the conductor of one of the colliding trains. The single question, therefore, presented for de-

cision is, were the telegraph operator and the engineer fellow-servants, in contemplation of section 162 of the Constitution of Virginia?

The trial court instructed the jury that "if they believed from the evidence that the operator of the defendant company failed to deliver the message to the conductor on the train coming from Big Stone Gap to Bristol, and that by reason thereof the accident resulted which caused the death of plaintiff's intestate, then they should find for the plaintiff."

The instruction, it will be observed, was equivalent to telling the jury that plaintiff's intestate and the telegraph operator were not fellow-servants, within the meaning of section 162. Counsel admit that prior to the promulgation of the Constitution, July 10, 1902, the parties would have been declared fellow-servants, under the decisions of this court, and there could not have been a recovery against the company upon the facts of this case. The controlling question, then, is, whether or not the telegraph operator falls within any of the exceptions of section 162, taking him out of the category of fellow-servant of plaintiff's intestate.

The section reads as follows:

"The doctrine of fellow-servant, so far as it affects the liability of the master for injuries to his servant resulting from the acts or omissions of any other servant or servants of the common master, is to the extent hereinafter stated, abolished as to every employee of a railroad company, engaged in the physical construction, repair or maintenance of its roadway, track, or any of the structures connected therewith, or in any work in or upon a car or engine standing upon a track, or in the physical operation of a train, car, engine, or switch, or in any service requiring his presence upon a train, car or engine; and every such employee shall have the same right to recover for every injury suffered by him from the acts or omissions of any other employee or employees of the common master, that a ser-

vant would have (at the time when this Constitution goes into
effect), if such acts or omissions were those of the master him-
self in the performance of a non-assignable duty; provided, that
the injury, so suffered by such railroad employee, result from
the negligence of an officer, or agent, of the company of a higher
grade of service than himself, or from that of a person, em-
ployed by the company, having the right, or charged with the
duty, to control or direct the general services or the immediate
work of the party injured, or the general services, or the imme-
diate work of the co-employee through, or by, whose act
or omission he is injured; or that it result from the negligence
of a co-employee engaged in another department of labor, or
engaged upon, or in charge of, any car upon which, or upon
the train of which it is a part, the injured employee is not at
the time of receiving the injury, or who is in charge of any
switch, signal point, or locomotive engine, or is charged with
dispatching trains or transmitting telegraphic or telephonic
orders therefor; and whether such negligence be in the perform-
ance of an assignable or non-assignable duty. The physical
construction, repair or maintenance of the roadway, track or any
of the structures connected therewith, and the physical con-
struction, repair, maintenance, cleaning or operation of trains,
cars or engines, shall be regarded as different departments of
labor within the meaning of this section. Knowledge, by any
such railroad employee injured, of the defective or unsafe
character or condition of any machinery, ways, appliances or
structures, shall be no defence to an action for injury caused
thereby. When death, whether instantaneous or not, results to
such an employee from any injury for which he could have
recovered, under the above provisions, had death not occurred,
then his legal or personal representative, surviving consort, and
relatives (and any trustee, curator, committee or guardian of
such consort or relatives) shall, respectively, have the same
rights and remedies with respect thereto as if his death had been

caused by the negligence of a co-employee while in the performance as vice-principal, of a non-assignable duty of the master. Every contract or agreement, express or implied, made by an employee, to waive the benefit of this section, shall be null and void. This section shall not be construed to deprive any employee, or his legal or personal representative, surviving consort or relatives (or any trustee, curator, committee or guardian of such consort or relatives), of any rights or remedies that he or they may have by the law of the land, at the time this Constitution goes into effect. Nothing contained in this section shall restrict the power of the General Assembly to further enlarge, for the above-named class of employees, the rights and remedies hereinbefore provided for, or to extend the rights and remedies to, or otherwise enlarge the present rights and remedies of, any other class of employees of railroads or of employees of any person, firm or corporation."

The defendant company insists that inasmuch as the foregoing section tends to increase the common law liability of railroad companies, it ought to be strictly construed, and that, when so construed, it leaves unchanged the relations which previously existed between these employees. Whatever may be said of the soundness of that proposition with respect to the construction of statutes in derogation of the common law, the rule has no application to the remedial provisions of a Constitution ordained for the obvious purpose of relaxing the stringency of existing precedents in the interest of employees engaged in the dangerous occupation of constructing, maintaining and operating railroads. The Constitutional Convention, in its wisdom, has deemed it salutary and just to employees to modify the common law fellow-servants doctrine so as to meet the exigencies arising from changed conditions in modern railroading. Under such circumstances it is the duty of the courts to give effect to that policy, rather than to defeat it by resort to narrow and technical rules of construction. The true purpose of construc-

tion is, at last, to discover the intention of the framers of the Constitution, and to promote the objects for the attainment of which that instrument was ordained; and to that end a fair interpretation must be given to the language employed, construing the words in their ordinary and popular acceptation, unless it clearly appears that they were intended to be used in some other sense. When language is plain, and its meaning obvious, there is no room for construction. The proper rule for the exposition of a Constitution is thus stated by Judge Cooley in his work on Constitutional Limitations:

"It is also a very reasonable rule that a State Constitution shall be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force. By this we do not mean that the common law is to control the Constitution, or that the latter is to be warped and perverted in its meaning, in order that no inroads, or as few as possible, may be made in the system of common law rules, but only that for its definitions we are to draw from that great fountain, and that in judging what it means, we are to keep in mind that it is not the beginning of law for the State, but that it assumes the existence of a well-understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes. It is a maxim with the courts, that statutes in derogation of the common law shall be construed strictly, a maxim which we fear is sometimes perverted to the overthrow of the legislative intent; but there can seldom be either propriety or safety in applying this maxim to constitutions. When these instruments assume to make any change in the common law, the change designed is generally a radical one; but as they do not go minutely into particulars, as do statutes, it will sometimes be easy to defeat a provision, if courts are at liberty to say that they will presume against any intention to alter the common law further than is expressly declared. A reasonable construction is what such an

instrument demands and should receive; and the real question is, what the people meant, and not how meaningless their words can be made by the application of arbitrary rules." *Cooley on Const. Lim.,* 7th Ed., p. 94.

In light of these principles, this court has no difficulty in expounding that part of section 162 applicable to the case in judgment. This clause in terms abolishes the fellow-servant doctrine, so far as it affects the liability of the master for injuries to his servant resulting from the acts or omissions of a co-employee "charged with dispatching trains or transmitting telegraphic or telephonic orders therefor." The object of train dispatching is to place in the hands of conductors who manage the trains of the company proper and safe orders for their guidance. The source of such orders is the office of the train-dispatcher, from which they emanate, and their destination is the hand of the conductor of the train whose movements they are intended to direct and control. The order is *in transitu* from the time it leaves the one until it reaches the other, and every agent of the company through whose hands the order passes is necessarily engaged in its transmission until it reaches its ultimate destination. There can be no reason for holding, under the language of this provision, that a train-dispatcher is not a fellow-servant of the trainmen to be affected by the order, but that a telegraph operator, through whom the order is to be transmitted to the conductor, and the trainmen are fellow-servants. Each constitutes part of a conduit through which the order is transmitted from its source to its destination; and the omission of either to discharge his important function defeats that object. The purpose of the provision is to hold the company responsible for the consequences of the negligence of its agents in dispatching trains or transmitting orders, and there is nothing in the language employed to justify the contention of the company that no operator on the line, except the dispatcher in the train-dispatcher's office, is charged with the

duty of dispatching trains or transmitting telegraphic orders therefor.

. If "transmitting orders" for the movement of trains were synonymous with "dispatching trains," then there would have been no necessity for the use of both terms in the connection in which they occur. Nor is any authority adduced in support of the proposition that "transmitting" an order, is to be construed to mean transmitting it by telegraph only. To subject the provision to that restricted interpretation would not only do violence to the language used, but would also defeat the manifest object of the framers of the Constitution. The clause means what the words import, and includes all agents of the company, whose duty it is to transmit telegraphic or telephonic orders for the movement of trains to the conductors of such trains, no matter what instrumentalities may be employed to accomplish that purpose. It would be a vain thing for the framers of the Constitution to protect trainmen against the negligence of a train-dispatcher, and leave them exposed to the carelessness of other agents of the company, through whom the train-dispatchers' orders must be transmitted before reaching their final destination.

The judgment complained of is plainly right, and it must be affirmed.

*Affirmed.*