# Richmond.

## JAMES R. SAVAGE v. COMMONWEALTH.

March 21, 1929.

The opinion states the case.

*George L. Doughty* and *C. M. Lankford, Jr.*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General*, for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The petitioner is charged with the violation of the motor vehicle act (Code, section 4097-b; Acts 1923, page 195; amended Acts 1924, page 330, and again Acts 1926, page 920) in that he was operating a motor truck for compensation upon one of the highways of the State without first obtaining from the State Corporation Commission a certificate or permit, designated in the act as "Certificate E." He was convicted and fined, and that judgment is before us for review.

The facts, which are agreed, are: "On the 25th day of April, 1927, James R. Savage, a resident of the town of Onancock, in the county of Accomac, State of Virginia, was engaged in operating a motor truck over the improved public highways of the State of Virginia, in carrying and transporting for compensation and by private employment, but not under a regular schedule, or between fixed termini, bricks from Tasley to Onancock, both of which towns are of the county of Accomack, State of Virginia, without having obtained from the State Corporation Commission a certificate or permit E, as designated in the Code of Virginia, section 4097-f, as amended."

There was a demurrer to the warrant, which was overruled, and the case having been submitted to the court, the accused was found guilty.

It is assigned as error that both of these rulings, which present the same question, are erroneous.

The language to be construed is found in section 2 and section 5 (2).

The portion of section 2 involved reads: "No corporation or person, their lessees, trustees or receivers shall operate any motor propelled vehicle as hereinbefore defined, for the transportation of persons or property for compensation on any improved public highways of this State, except in accordance with the provisions of this act, and every motor vehicle carrier, as hereinbefore defined, is hereby declared to be a common carrier, a transportation company and a public service corporation within the meaning of the laws of this State, and as such subject to control, supervision and regulation by the Commission in the manner provided by law; but no such motor vehicle carriers shall be deemed to possess the power of eminent domain, and in the matter of fixing and regulating rates the procedure shall be as provided by law for public utility companies."

The act then contains provisions for issuing certificates or licenses to six classes of carriers of persons and property for compensation over the public highways. It specifically provides that Certificate A shall be under certain conditions granted to common carriers of passengers who propose to operate on a fixed schedule, and to common carriers of property Certificate D shall be granted. The only other certificate to be granted to carriers of property is Certificate E, which is here directly involved. That certificate is provided for in section 5 (2), in this language:

"The Commission may grant a Certificate E for property carrying vehicles to such applicant or applicants holding themselves out for private employment only for the transportation of specific loads or commodities for one person or firm on a single trip, to or from the city, town or location from which said carrier operates to such other cities, towns or locations over any improved public highway of the State, but who will not operate upon a regular schedule, nor solicit nor receive patronage along the route or between the cities, towns or localities served by a class D carrier.

"Nothing in this section, however, shall prohibit or interfere with class E carriers while engaged in the transportation of farm or dairy products exclusively from the farm or dairy to market or shipping point."

■ The contention is that the act, section 2, by express language, converts the private carrier into a common carrier, thereby imposing upon a private carrier without his consent, all of the obligations and burdens of a common carrier, except that it withholds the power of eminent domain. It is contended in this case that the statute takes the private property of the petitioner for public uses without just compensation, and deprives him of his property without due process of law, in violation of the fourteenth amendment of the Constitution of the United States.

It is urged upon us that in the case of *Frost, et al.* v. *Railroad Commission of California*, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, the precise question was presented and decided in favor of petitioner's contention.

The conclusion in that case was specifically based upon the construction which the Supreme Court of California had apparently placed upon the California automobile, stage and truck transportation act,

(*Frost, et al.* v. *Railroad Commission of California*), **197** Cal. 230, 240 Pac. 26. The opinion of the majority, expressed by Mr. Justice Sutherland (with three of the justices dissenting), is thus stated:

"On behalf of the plaintiffs in error the contention is that, in its application to private carriers, the act has the effect of transforming them into public carriers by legislative fiat. Upon the other side it is said that the sole purpose of the legislation 'is to impress upon such private carriers certain regulations so long as they desire to use the publicly built and owned highways as the chief situs of their business of hauling goods for compensation,' and that 'they are not, and cannot be, forced, directly or indirectly, to become common carriers.'

"It is unnecessary to inquire which view is correct, since the act has been authoritatively construed by the State Supreme Court. That court, while saying that the State was without power, by mere legislative fiat or even by constitutional enactment, to transmute a private carrier into a public carrier, declared that the State had the power to grant or altogether withhold from its citizens the privilege of using its public highways for the purpose of transacting private business thereon; and that, therefore, the legislature might grant the right on such conditions as it saw fit to impose. In the light of this general statement of principle, it was held that the effect of the transportation act is to offer a special privilege of using the public highways to the private carrier for compensation upon condition that he shall dedicate his property to the *quasi* public use of public transportation; that the private carrier is not obliged to submit himself to the condition, but, if he does not, he is not entitled to the privilege of using the highways.

"It is very clear that the act, as thus applied, is in no real sense a regulation of the use of the public highways. It is a regulation of the business of those who are engaged in using them. Its primary purpose evidently is to protect the business of those who are common carriers in fact by controlling competitive conditions. Protection or conservation of the highways is not involved. This, in effect, is the view of the court below plainly expressed, (*Frost, et al.* v. *Railroad Commission of California*), 197 Cal. 230, 240 Pac. 26.

"Thus it will be seen that, under the act as construed by the State court, whose construction is binding upon us, a private carrier may avail himself of the use of the highways only upon condition that he dedicate his property to the business of public transportation and subject himself to all the duties and burdens imposed by the act upon common carriers. In other words, the case presented is not that of a private carrier who, in order to have the privilege of using the highways, is required merely to secure a certificate of public convenience and become subject to regulations appropriate to that kind of a carrier; but it is that of a private carrier who, in order to enjoy the use of the highways, must submit to the condition of becoming a common carrier and of being regulated as such by the railroad commission. The certificate of public convenience required by section 5, is exacted of a common carrier and is purely incidental to that status. The requirement does not apply to a private carrier *qua* private carrier, but to him only in his imposed statutory character of common carrier. Apart from that signification, so far as he is concerned, it does not exist."

It is evident from this language that the Supreme Court of the United States felt bound by the construction which the California court had given to the act,

and, as it seems to us, there is a strong intimation that if the court had felt free to construe the California act, it might have reached a different conclusion.

██ Adverting now to the Virginia act, it seems to us perfectly clear that it does not undertake to convert a private carrier into a common carrier, for the purpose of imposing thereon all of the obligations and burdens of a common carrier. On the contrary, common carriers of persons and property, who by the express terms of the act must operate upon fixed schedules and over specified routes and pay to the Commonwealth different and much larger license fees or taxation than private carriers of property whose burdens and privileges are carefully distinguished but who are required to secure a Certificate E. Upon the very face of section 5 (2), the privilege accorded the holder of Certificate E, and the consequent burden, is that of a private carrier. Using the language of the act, it is issued only "to such applicant or applicants holding themselves out for private employment only for the transportation of specific loads or commodities for one person or firm on a single trip, to or from the city, town or location from which said carrier operates to such other cities, towns or locations over any improved public highway of the State, but who will not operate upon a regular schedule, nor solicit nor receive patronage along the route or between the cities, towns or locations served by a class D carrier." The section itself clearly classifies the private, or class E, carrier of property by private contract, and distinguishes such a carrier from the class D, or common, carrier of property. Instead of attempting to transform the private carrier into a public or common carrier, his status as a private carrier is definitely fixed by the act, and the language employed clearly demonstrates the fact that the holder of a class

E certificate is not a common carrier. True it is that the language of section 2 suggests a different idea, but the whole statute must be considered and effect given to each of the sections according to their true intent and meaning. So considered, it appears to us manifest that the holder of a Certificate E is only authorized to conduct the business of a private carrier by making separate contracts with each of his customers, while the privilege of conducting the business of a common carrier is clearly withheld from him by the same clause of the section. It is clear that all of the burdens of a common carrier of property are not by the statute imposed upon such a private carrier. Such burdens follow the privilege, and the privilege of being a common carrier of property is only granted to holders of Certificate D.

██ There seems to be no doubt whatever as to the power of the State to regulate traffic upon the highways, even to the extent of prohibiting the use of such highways as the chief situs for the conduct of private business, subject always to constitutional rights.

The Virginia act, as its main purpose, is designed to produce revenue for the construction and repair of highways by placing appropriate financial burdens upon those who use them as the chief place for conducting private business.

██ Another principle is involved. No legislative act should be construed as intended to deny constitutional rights unless such a conclusion is unavoidable. The General Assembly is presumed to know that it could not legally violate the Constitution of the United States by requiring private carriers of freight to become common carriers against their will, and as we understand this act, it does not purport to do so, but carries the fundamental distinction between public and private carriers upon

its face and undertakes to impose no illegal burden upon a private carrier.

[7] The petitioner here was engaged in the business of transporting property upon the public highway as a private carrier. For that privilege he was required to secure a Certificate E, and to pay the fee therefor imposed by the statute. This was a legal exaction, and therefore the judgment is affirmed.

*Affirmed.*