September 10, 1952.

Record No. 4021½.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ

The opinion states the case.

*William J. Hassan, Lawrence W. Douglas* and *Edmund D. Campbell,* for the petitioners.

*John Locke Green* and *Alfred W. Trueax,* for the respondents.

MILLER, J., delivered the opinion of the court.

The constitutionality of section 2-27, Code of 1950, and of section 2-29, subsection 11, Code of 1950, as amended by Acts of 1950, ch. 90, p. 101, is tested by this litigation.

A bill in equity was filed by Rocco Paolicelli and others, citizens and taxpayers of Arlington county, against Alan L. Dean, a member of the County Board of Arlington county, Colin C. MacPherson, treasurer of Arlington county, and others. The object of the proceeding was to have the court declare subsection 11 of section 2-29, Code of 1950, as amended, unconstitutional, adjudicate that Dean had, under the provision of section 2-27 of the Code, vacated his office as a member of the Board, and restrain the treasurer from paying his salary as a board member.

The parties will be designated complainants and defendants in accordance with the position occupied by them in the lower court, and for brevity, the County Board of Arlington county will be called the Board.

The bill alleges that Dean assumed membership on the Board January 1, 1952, and has since that date undertaken to perform the duties of a board member, and that during that time he was an employee of the Federal government. It also alleges that since January 1, 1952, he has drawn salary as a board member and as an employee of the United States. In effect, the charge is made that under section 2-27, Dean vacated his office on the board by acceptance of Federal employment. The office was vacated, they say, because subsection 11 of section 2-29, as amended by Acts of 1950, ch. 90, p. 101, under which Dean claims the right to serve as an employee of the United States while holding office on the Board, is special and local legislation that violates section 64, Art. IV, Constitution of Virginia. Subsection 11 being thus rendered inoperative, Dean's office on the Board was, it is claimed, vacated by force of section 2-27.

The County Board of Arlington county, a body corporate, asked leave to intervene in the cause and by order duly entered, was made a party defendant. The individual defendants and the Board demurred to the bill. They insist that subsection 11, as amended by Acts of 1950, is constitutional and allows Dean to hold his office while serving as a Federal employee. It is asserted that section 2-27 is special legislation of the character not prohibited by the Constitution, (*Leesburg* v. *Loudoun County School Board*, 181 Va. 279, 24 S. E. (2d) 439), and thus the supplemental or amending legislation provided in subsection 11 of section 2-29 does not violate the constitution. However, if subsection 11 be held unconstitutional, then, in that event, defendants insist that section 2-27 is unconstitutional because it violates section 32, Article II, Constitution of Virginia. In this connection it is said that section 32 states and prescribes in comprehensive language that every qualified voter shall be eligible to any public office and the qualifications therein specified may not be added to or restricted by legislative enactment. Defendants then assert that by section 2-27 the legislature has illegally attempted to impose additional qualifications by disqualifying an officeholder who accepts employment with the Federal government though he otherwise measures up to the requirements of section 32.

To counter this contention complainants invoke section 56, Article IV, Constitution of Virginia, which empowers the General Assembly to declare when an office shall be deemed vacant when no such provision is made therefor in the constitution.

The office of defendant, Dean, has been vacated, and he is illegally exercising the powers of a board member if the contention of complainants that subsection 11 is unconstitutional, is correct. On the other hand, if defendants are correct in their contention that subsection 11 is constitutional or that section 2-27 is unconstitutional, then there is no legislative inhibition to prevent Dean from serving as a board member while employed by the United States government.

After hearing argument upon the demurrer, the court treated the bill of complaint as one for a declaratory judgment and overruled the demurrer. The merits of the case being presented by the pleadings, the defendants elected to stand on their demurrer. The court thereupon entered a decree on May 8, 1952, which declared section 2-27 to be constitutional but held that

section 2-29, subsection 11, Code 1950, and subsection 11, as amended by Acts of 1950, ch. 90, p. 101, to be "special and local legislation, and as such, in violation of the constitution of this state."

Though the decree recited that "this order is final," no injunction was awarded to restrain the treasurer from paying Dean his salary, nor was his office on the board declared vacant.

Though there are other incidental problems involved, the chief questions presented to us for determination have to do with the constitutionality of the two sections of the Code, i. e., section 2-27 and section 2-29, subsection 11.

█ It is to be kept in mind that the right to be elected to public office and the right of incumbency are not natural, absolute and inalienable rights inherent in all individuals. They are rather political privileges, upon which may be imposed reasonable qualifications, conditions and restrictions in the interest of the public. 42 Am. Jur., Public Officers, sections 3 and 37, 67 C. J. S., Officers, section 11, et seq.

Section 2-27, which imposes certain qualifications and conditions upon a person who assumes to occupy and hold an office, reads as follows:

"No person shall be capable of holding any office or post mentioned in the preceding section [i.e., any office of honor, profit, or trust, under the constitution of Virginia], who holds any office or post of profit, trust, or emolument, civil or military, legislative, executive or judicial, under the government of the United States, or who is in the employment of such government, or who receives from it in any way any emolument whatever; and the acceptance of any such office, post, trust, or emolument, or acceptance of any emolument whatever under such government, shall, ipso facto, vacate any office, or post of profit, trust or emolument under the government of this Commonwealth or under any county, city, or town thereof."

Section 2-29, Code of 1950, as amended by Acts of 1950, ch. 90, p. 101, consists of a group of fourteen exceptions to section 2-27, which have the effect of limiting its operation and thus, in part, repealing it.

Insofar as pertinent here, section 2-29, as amended by Acts of 1950, ch. 90, p. 101, provides that section 2-27 shall not be construed:

"(11) To prevent any United States government employee,

otherwise eligible, from holding any office under the government of any county in this state having a population in excess of three hundred inhabitants per square mile, *or of any city or county adjoining any county having a population in excess of two thousand inhabitants per square mile; * * *''[1]

No part of the relief prayed for by complainants can be awarded if section 2-27 is unconstitutional. It is therefore best that we decide whether or not it contravenes section 32 of the constitution before the validity or invalidity of subsection 11 of section 2-29 is considered. We now direct our attention to that phase of the case.

The pertinent part of section 32, upon which defendants rely to support their contention that section 2-27 of the Code is unconstitutional, and section 56, under which complainants assert that the legislature was empowered to enact section 2-27, read respectively as follows:

32: ''Every person qualified to vote shall be eligible to any office of the State, or of any county, city, town or other subdivision of the State, wherein he resides, except as otherwise provided in this Constitution, * * *''

56: ''The manner of conducting and making returns of elections, of determining contested elections, and of filling vacancies in office, in cases not specially provided for by this Constitution, shall be prescribed by law, *and the General Assembly may declare the cases in which any office shall be deemed vacant where no provision is made for that purpose in this Constitution.''* (Italics supplied.)

When sections 32 and 56 of the constitution are read and considered together, which must be done, was the enactment of section 2-27 within the power of the legislature? That is the first question to be solved.

When these sections of the constitution are considered in the light of each other and the controlling principles of construction applied, complainants assert that there is no conflict. They insist

---

[1] Subsection 11 of section 2-29, as it appears in the Code of 1950 (before the amendment and re-enactment by Acts of 1950, ch. 90, p. 101) is as follows:

"(11) To prevent any United States government employee, otherwise eligible, from holding any office under the government of any county in this State having a population in excess of three hundred inhabitants per square mile according to the last United States census; * * *"

Section 2-29 was further amended and re-enacted in 1952, Acts of 1952, ch. 120, p. 125.

that section 32 deals solely with qualifications of eligibility in the first instance, *i.e., eligibility of the aspirant to election,* whereas section 56 empowers the legislature, *in the interest of the public,* to determine the electee's *capability to hold the office,* and if incapable, to declare the office vacant if provision for such declaration be not made elsewhere in the constitution. Complainants then argue that there is no provision in the constitution declaring an office of this character vacant if its incumbent accepts another office or employment with the United States government, and that in keeping with the public policy of this state, the legislature is fully empowered by section 56 to enact section 2-27 which makes that declaration in the interest of the public.

■ The office and purpose of the constitution is to shape and fix the limits of governmental activity. It thus proclaims, safeguards and preserves in basic form the pre-existing laws, rights, *mores,* habits and modes of thought and life of the people as developed under the common law and as existing at the time of its adoption to the extent and as therein stated. *Commonwealth v. Newport News,* 158 Va. 521, 164 S. E. 689, *Virginia, etc., R. Co. v. Clower,* 102 Va. 867, 47 S. E. 1003.

■ Its interpretation and construction are to be made with recognition of the fact that it is based upon and announces the fundamental theory and principles of sovereignty and government as developed under the common law. 4 Michie's Jurisprudence, Constitutional Law, sec. 7, p. 94, *Commonwealth v. Newport News, supra.*

■ The constitution must be viewed and construed as a whole, and every section, phrase and word given effect and harmonized if possible. *Barbour v. Grimsley,* 107 Va. 814, 61 S. E. 1135; *Portsmouth v. Weiss,* 145 Va. 94, 133 S. E. 781; *Funkhouser v. Spahr,* 102 Va. 306, 46 S. E. 378; *Board of Sup'rs v. Cox,* 155 Va. 687, 156 S. E. 755.

Purpose, meaning and force must be accorded both of these sections of the constitution and to all of their provisions unless they be irreconcilably contradictory and repugnant. *State v. Harden,* 62 W. Va. 313, 58 S. E. 715, 60 S. E. 394; *Board of Sup'rs v. Cox, supra.*

■ The purpose and object sought to be attained by the framers of the constitution is to be looked for, and the will and intent of the people who ratified it is to be made effective. *May v. Topping,* 65 W. Va. 656, 64 S. E. 848.

■ If words and phrases used in a constitution are of doubtful import, their contemporaneous and practical construction are significant and may be resorted to for aid in determining their meaning. *Blake* v. *Marshall,* 152 Va. 616, 148 S. E. 789; *State* v. *Kittle,* 87 W. Va. 526, 105 S. E. 775; *Stuart* v. *Laird,* 1 Cranch (5 U. S.)299, 2 L. ed. 115; *Roanoke* v. *Michael's Bakery Corp.,* 180 Va. 132, 21 S. E. (2d) 788.

■ Legislative construction of a constitutional provision is entitled to consideration, and if the construction be contemporaneous with adoption of the constitutional provision, it is entitled to great weight. *Roanoke* v. *Michael's Bakery Corp., supra.* Long acquiescence in such an announced construction so strengthens it that it should not be changed unless plainly wrong. *State* v. *Rocke,* 91 W. Va. 423, 113 S. E. 647.

. "Acts of the legislature are presumed to be constitutional unless illegality appears upon their face." *Joyner* v. *Centre Motor Co.,* 192 Va. 627, 635, 66 S. E. (2d) 469.

"The Constitution is not a grant of power, but only the restriction of powers otherwise practically unlimited, and except as far as restrained by the Constitution of this State and the Constitution of the United States, the legislature has plenary power." *Newport News* v. *Elizabeth City County,* 189 Va. 825, 831, 55 S. E. (2d) 56.

■ The passage of an act by the legislature is a solemn declaration and affirmance by that branch of government of its constitutional power to enact the legislation, and its unconstitutionality must plainly appear before a court can declare it void. *Roanoke* v. *Elliott,* 123 Va. 393, 96 S. E. 819; *Pine* v. *Commonwealth,* 121 Va. 812, 93 S. E. 652. Every reasonable presumption must be indulged and accorded it in favor of its legality. *Willis* v. *Kalmbach,* 109 Va. 475, 64 S. E. 342, 21 L. R. A. (N. S.) 1009; *Roanoke* v. *Michael's Bakery Corp., supra;* 17 Michie's Jurisprudence, Statutes, sec. 29.

■ No act of the legislature should be held unconstitutional unless it is prohibited by the state or federal constitution in express terms or by necessary implication, nor should it be so construed as to bring it into conflict with constitutional provisions unless such a construction is unavoidable. *Smith* v. *Commonwealth,* 75 Va. 904; *Savage* v. *Commonwealth,* 152 Va. 992, 147 S. E. 262.

With the above principles of construction applicable respectively to the constitution and the Acts of the Legislature, we now test section 2-27. That legislation, first enacted on December 8, 1788, is titled and worded as follows:

"*An act to disable certain officers under the continental government, from holding offices under the authority of this commonwealth.*

"I. WHEREAS the good people of this commonwealth in convention assembled did, on the twenty fifth day of June last, ratify a constitution for the government of the United States of America, the operations of which will soon commence;

"II. And whereas it is judged expedient and necessary, that all those who shall be employed in the administration of the said government, ought to be disqualified from holding, or administering any office, or place whatsoever, under the government of this commonwealth: *Be it therefore enacted by the General Assembly,* That the members of the congress of the United States and all persons who shall hold any legislative, executive, or judicial office, or other lucrative office whatsoever, under the authority of the United States, shall be ineligible to, and incapable of holding any seat in either house of the general assembly, or any legislative, executive, or judicial office, or other lucrative office whatsoever, *under,* under the government of this commonwealth: *Provided nevertheless,* That such disqualification shall not extend to militia officers, or the magistrates of county courts." 12 Hening's Statutes at Large, ch. 38, p. 694.

As thereafter amended, it appears in language comprehensive and emphatic in Volume 1, Code of Virginia, 1819, chapter 27, page 71.[2]

[2] *An act, to reduce into one act, the acts to disable officers of the Continental Government from holding offices under the authority of this Commonwealth.*

WHEREAS the good people of this Commonwealth, in Convention assembled, did, on the twenty-fifth day of June, one thousand seven hundred and eighty-eight, ratify a Constitution for the Government of the United States of America; and whereas, it is judged expedient and necessary that all those who shall be employed in the administration of the said Government ought to be disqualified from holding or administering any office or place whatsoever under the Government of this Commonwealth:

1. *Be it therefore enacted,* That no person holding or accepting any office or place, or any commission or appointment whatsoever, legislative, executive, or judicial, civil or military, under the authority of the United States, whether any pay or emolument be attached to such office, place, commission or appointment, or otherwise, or accepting or receiving any emolument whatsoever from the United States, shall be capable

It was from time to time further amended and is carried as Virginia Code, 1849, Title 5, chapter XII, sections 2 and 3, page 84.[3] As shown in footnote 3 hereto, it was then enacted in two separate sections, the first of which stated that "No person shall be capable of holding" office under the government of Virginia who receives emolument from the United States. The other section directed that the first section should not be construed to apply to certain named offices, or in certain instances, thereby limiting its operation and excluding from its effect offices and parties that would otherwise have been subject to its ban. So separated into two distinct sections, and as thereafter amended and supplemented, it appears in the successive official Virginia Codes of 1887 and 1919 as sections 163, 164, and sections 290, 291 respectively, and in the Code of 1950 as section 2-27 (herein quoted) and section 2-29.

Section 56 of our present Constitution, which appears under Article IV, headed "Legislative Department," antedates section 32. Section 56 first appeared in the Constitution of 1850 as section 38, Article IV, "Legislative Department, General Provisions." There the part now to be construed, *i.e.*, "And the General Assembly may declare the cases in which any office shall

---

of holding any office legislative, executive, or judicial, or any other office, place, or appointment of trust or profit, under the Government of this Commonwealth: *Provided,* that nothing herein contained shall be so construed, as to prevent Members of Congress from sitting as county-court magistrates, or from holding offices in the militia, or so as to exclude any person receiving a pension from the United States, in consequence of any wound received in war, from any office under this Commonwealth, on account of such pension; or, so as to create any exclusion whatsoever of militia officers or soldiers, on account of the recompense they may receive from the United States, when called out into actual duty.

2. All acts and parts of acts, coming within the purview of this act, shall be and the same are hereby repealed: *Provided,* that nothing herein contained shall affect any forfeiture or prosecution heretofore incurred or commenced.

3. This act shall commence and be in force, from and after the first day of January, eighteen hundred and twenty.

[3] 2. No person shall be capable of holding any such post, who holds any post of profit, trust or emolument, civil or military, legislative, executive or judicial, under the government of the *United States,* or who receives in any way from the *United States* any emolument whatever.

3. The preceding section shall not be construed to prevent members of congress from acting as justices, visitors of the university and *Virginia* military institute, or from holding offices in the militia, or to exclude from office under this state, on account of a pension from the *United States,* a person to whom such pension has been granted in consequence of a wound received in war, or to exclude from such office militia officers or soldiers, on account of the recompense they may receive from the *United States* when called out into actual duty.

be deemed vacant, where no provision is made for that purpose in this constitution," made up a separate sentence, but it was couched in language identical with that now used. As thus worded, it appears in each constitution adopted subsequent to 1850.

Section 32 of the present Constitution, found in Article II under the heading, "Elective Franchise and Qualifications for Office," was adopted by the Constitutional Convention of 1902, but in 1928 a part of this section not pertinent, or quoted herein, was slightly changed. The section was an outgrowth or amendment of Article III, section 2, first adopted in the Constitution of 1870. It there reads:

"All elections shall be by ballot, and all persons entitled to vote shall be eligible to any office within the gift of the people, except as restricted in this constitution."

When Article III, section 2, Constitution of 1870, was first adopted, the principle embodied in section 2-27 had long been the announced public policy of Virginia. That policy, as voiced in 1788 (12 Hening's Statutes at Large, ch. 38, p. 694) was but a clear and positive legislative declaration, in scope deemed proper and advisable, of the common law policy which forbade the simultaneous occupancy by a person of two or more incompatible offices. 42 Am. Jur., Public Officers, sections 59, 65 and 70, 67 C. J. S., Officers, sec. 23, p. 133, *et seq.*, 100 A.L.R. 1162.

"In order to preserve a pure public policy, state constitutions and statutes frequently provide that one and the same person shall not, at the same time, hold an office of profit or trust both under the state and under the national government, or that persons holding judicial offices shall not, at the same time, hold other offices of trust or profit, or that the same person shall not, at the same time, hold two offices of profit or trust, or the like. Such provisions cover substantially the same ground as the common-law inhibition against the same person holding incompatible offices at the same time, and they also, in many cases, go further, and arbitrarily prohibit the holding of two offices which, at common law, would not be deemed to be incompatible. Hence, if the holding of two offices by the same person, at the same time, is inhibited by the constitution or statute, a forbidden incompatibility is created similar in its effect to that of the common law, and as in the case of the latter, it is well settled by an overwhelming array of authority that the acceptance of a second of-

fice of the kind prohibited operates, ipso facto, to absolutely vacate the first office: * * *'' Freeman's note in 86 Am. St. Rep. 583. *Shepherd* v. *Sartain*, 185 Ala. 439, 64 So. 57; Annot., 88 A. L. R. 812.

It is not amiss to state that Congress has enacted legislation making this policy generally applicable to officers and employees of the Federal government. 50 Stat. 549 (1937), 52 Stat. 1194 (1938), 5 U.S.C.A., sec. 62 (1950 Cum. Supp.); and R. S. sec. 1765, 5 U.S.C.A., sec. 70 (1927 ed.).

By the Virginia act as originally passed in 1788, the common law policy deemed for the public weal was broadened and made to include and render ineligible to office under the government of Virginia, those who held legislative, executive, judicial or any other lucrative office under the authority of the United States.

When the act appeared in the Code of 1849, ch. 12, p. 84, the phrase, ''shall be ineligible,'' had been dropped, but in its place the declaration was made that ''no person shall be capable of holding'' office under the State government who holds office under the government of the United States, or receives ''from the United States any emolument whatever.'' The specific provision that the officeholder ''shall, ipso facto, vacate any post of profit * * *'' held under the government of Virginia, was incorporated into the law by Acts of 1883-84, ch. 145, p. 181. That act was approved February 22, 1884 and declared to ''be in force from its passage.''

With the positive laws of this State, constitutional and statutory, dealing with this matter of public policy so existing as they did in 1884, and the legislative enactments and constitutional provisions adopted in the sequence stated, this court on May 8, 1884, decided the case of *Gallalee* v. *Calvert*, 1 Va. Dec. 561. The facts of that case, as stated in the editor's preamble, are that under the law as it existed on January 24, 1884, (which was a month prior to the adoption and inclusion therein of the phrase, ''shall, ipso facto, vacate any post of profit'') Gallalee was on that day appointed registrar for the fourth ward of Portsmouth. He then held, and continued thereafter to hold, a post with the navy yard at Norfolk. On March 25, 1884, Calvert was appointed to the same office by the electoral board of Portsmouth which undertook to make the appointment under an act of February 14, 1884 (Acts of 1883-84, ch. 115, p. 150). On March

28, 1884, on demand of Calvert, the prior appointee, Gallalee, delivered up the incumbency, but a few days later he sought restoration to the office through a petition for a writ of mandamus filed in this court. In deciding that Gallalee was not entitled to the office, this court held that under Article V, section 22, Constitution of 1870 (now section 56 of the Constitution of 1902), the legislature was empowered to pass the act of 1883-84, ch. 145, p. 181 (now section 2-27). The opinion quotes the legislative act at length and concludes by saying, ''The petitioner must, therefore, be held to have waived his right to the office of registrar by his continuance in the employment of the United States, and consequently that office must be declared vacant.''

It is to be noted that no declaration was made which confirmed Calvert's claim to the office, but the office was declared vacant and the writ of mandamus sought by Gallalee refused. That seems due to the fact that at the same term of this court at which the decision was rendered, the case of *Black* v. *Trower,* 79 Va. 123, which is relied upon by the defendants, was also decided. In that case, which was likewise a proceeding for a writ of mandamus brought by Black against Trower to oust him from the office of registrar in the city of Norfolk and seat Black, the constitutionality of the act of February 14, 1884 (Acts 1883-84, ch. 115, p. 150) was challenged by petitioner Black. That was the same act under which the electoral board in Portsmouth had attempted to appoint Calvert. It provided that once during every four years the legislature should elect an electoral board for each county and city, which should be composed of three members *''who shall be free-holders and resi-dents of each county and city for which they are appointed.''* (Emphasis added.) These boards were then empowered to appoint for their respective counties and cities the registrars and other election officers provided for in the act. The act was challenged as violative of Article I, sections 20 and 21, and Article III, section 2 of the Constitution of 1870. Sections 20 and 21 provided respectively that ''All citizens of the State * * * possess equal civil and political rights and public privileges'' and ''the rights enumerated * * * shall not be construed to limit other rights * * * not therein expressed.'' It was claimed to be violative of Article III, section 2, which declares that ''* * * all persons entitled to vote shall be eligible to any office * * * except as restricted in this constitution'' because it

imposed additional qualifications of eligibility to office other than those set out in the constitution.

The court held the act violative of the several constitutional provisions. With reference to its infringement of Article III, section 2, it said:

"It is easy to see how, if the construction for which the respondents contend were to prevail, the legislature might, by creating offices and prescribing qualifications not found in the constitution, effectually confine within a comparatively small circle a large portion of the powers of the state government; for if it may prescribe a freehold qualification for office, it may declare that none shall be eligible whose freehold estates are of less value than $100,000, or that only persons of a certain race or color or profession shall be eligible, and thus in a most important particular, deeply affecting the interests of the people, violate the equality of rights and privileges guaranteed by the constitution. * * *" *Black* v. *Trower, supra,* at 126.

The result of that holding was that Trower, the incumbent who had been appointed to the office of registrar, under the same act upon which Calvert based his claim to a like office in Portsmouth, was ousted from the incumbency. Petitioner, Black, who had been appointed by the corporation court under a prior act, which the legislature had attempted to repeal by the unconstitutional act, *i.e.,* Acts of 1883-84, ch. 115, p. 150, was awarded the office.

In *Bunting* v. *Willis* (1876), 27 Gratt. (68 Va.) 144, 21 Am. Rep. 338, it was held that the office of sheriff occupied by Bunting was vacated by his simultaneously holding an office of profit under the United States. Judge Moncure, the then president of this court, delivered the opinion, and after quoting section 2, page 174, ch. 11, Title 5, Code 1873 (now section 2-27, Code 1950), said:

"It is at least optional with him, whether he will resign his federal office or not; and whether his election to the state office would be effectual or not, would depend on the contingency of his future resignation in time to enter on the duties of the state office." *Bunting* v. *Willis, supra,* at 153.

"Certainly, after the court had been informed and satisfied that Bunting, having been elected as sheriff while he held a lucrative federal office, was actually engaged in performing its duties after the term of the sheriffalty had commenced, the

court was well warranted in setting aside the order made at the same term of the court, admitting him to qualify as sheriff, and would then, at least, have been warranted in refusing to permit him to qualify. Surely the court has power and ought to refuse to permit a person to qualify therein to an office which he is incapable of holding.'' *Bunting* v. *Willis, supra,* at 159.

This decision held that the office of sheriff had been vacated though the phrase, ''shall, ipso facto, vacate any office'' had not at that date been incorporated into the statute.

Section 32, as now worded, was first adopted in 1902. The debates of that convention disclose that as proposed, it provided that ''Every person qualified to vote shall be eligible to *hold* any office * * *''. Debates Constitutional Convention, 1901 and 1902, Vol. 2, Article on Elective Franchise, pp. 2939 (13) and 3039. However, as *finally* adopted, it was so changed as to delete the word, ''hold'', from the above phrase.

With the decisions of *Bunting* v. *Willis, supra,* and *Gallalee* v. *Calvert, supra,* having been rendered, and with the act of 1788 reading as it then read in 1902, it cannot be reasonably thought that the Constitutional Convention would have deleted the word, ''hold'', from section 32, and then adopted it with the purpose that it annul the act of the legislature, change the public policy of the state and destroy the precedent of those two decisions.

We do not attribute to the framers of the Constitution of 1902, the purpose and intent to nullify the statute, and at the same time, change the adjudicated effect of Article V, sec. 22, Constitution of 1870, which was then re-adopted as section 56. That would be the necessary result if section 2-27 be held to violate section 32 of the constitution.

The more recent case of *Commonwealth* v. `Rouse,` 163 Va. 841, 178 S. E. 37, was a *quo warranto* proceeding brought at the relation of one J. E. Kelly against Love B. Rouse, then Commonwealth's attorney of the city of Bristol. Its object was to have the court declare the office of Commonwealth's attorney vacant because Rouse had accepted the position of attorney for the Home Owners' Loan Corporation, a federal agency, and was receiving emoluments of office therefrom. The constitutionality of section 290, Code 1919, now section 2-27, does not seem to have been questioned, but the court expressly recognized its validity for in the course of the opinion, it is said:

''In view of the purpose and provisions of the act, as above

noted, we do not think there can be any doubt that Rouse's employment as attorney for the Home Owners' Loan Corporation is under the government of the United States, and his acceptance of such employment and the emoluments therefrom was in contravention of section 290 of the Code." *Commonwealth* v. *Rouse, supra,* at 845.

However, Rouse was not removed from office because the nature of his employment with the Home Owners'·Loan Corporation was temporary, and relator was not entitled,. as a matter of right, to the relief that he sought.

In *Lynchburg* v. *Suttenfield,* 177 Va. 212, 13 S. E. (2d) 323, the court construed and applied one of the exceptions contained in section 291, Code 1919, (section 2-29, Code 1950), and thus at least inferentially recognized the validity of· section 290, Code 1919, now section 2-27, Code 1950.

Practical considerations and persuasive authority also tend to sustain section 2-27. It has been twice re-enacted (Code of 1887, Title 6, ch. 12, sec. 163, p. 105, and Acts of General Assembly 1942, Special Session 1942, ch. 4, p. 10) by the legislature with but minor amendments since the decision in *Gallalee* v. *Calvert, supra.* In addition to that legislative recognition and the assertion of its constitutionality by the Gallalee decision, the legal department of the state has recognized its validity and force and interpreted it for the guidance of state officers. In an opinion dated May 28, 1934, by the late Abram P. Staples, Attorney General of Virginia, and thereafter a justice of this court, section 290 of the Code of 1919 was relied upon and held to prevent a federal employee from acting as a "school trustee or member of the school board * * *." Opinions of Attorney General, July 1, 1933-June 30, 1934, p. 84.

This opinion makes incidental reference to the exceptions contained in section 291, but the facts involved made no exception pertinent, so their validity was not at issue.

Among the cases cited and relied upon by the defendants are *Gwaltmey* v. *Lyons,* 116 Va. 872, 84 S. E. 103, and *District Road Board* v. *Spilman,* 117 Va. 201, 84 S. E. 103. However, so far as here pertinent, they merely re-affirm the decision of *Black* v. *Trower, supra,* to the effect that a legislative enactment which required one to be a freeholder to be eligible for election to public office imposed additional qualifications forbidden by section 32 of the constitution.

The qualifications of *eligibility* to office fixed and stated in section 32 have to do with, and are limited to, qualifications necessary to be *elected* as distinguished from the electee's capability and capacity to *hold* the office.

"It is clear that the rule forbidding the holding of two offices at the same time, whether at the common law or under Constitutions and statutes, never contemplated a disability to be elected to the second office, but, on the contrary, conclusively affirms the legality and efficiency of such election. It is only the holding—that is, the occupation—of two offices at the same time that offends public policy, and is therefore forbidden by law. As pointed out by Judge Freeman in the note referred to (page 582), it is 'the acceptance and qualification for the second office' which vacates the first, not merely the acceptance; the incompatibility of the two offices depending upon the inability of the holder to consistently discharge the duties of each." *Shepherd* v. *Sartain, supra,* at 448 [64 So. 61]. *Attorney General* v. *Oakman,* 126 Mich. 717, 86 N. W. 151, 86 Am. St. Rep. 574, 583; *Attorney General* v. *Detroit Common Council,* 112 Mich. 145, 70 N. W. 450; *Foltz* v. *Kerlin,* 105 Ind. 221, 4 N. E. 439, 5 N. E. 672, 55 Am. Rep. 197; *State* v. *Dunn,* 73 N. C. 595; *State* v. *Pipes,* 17 La. App. 502, 133 So. 812 (affirmed in 173 La. 488, 137 So. 862).

"The rule has been stated in broad and unqualified terms that the acceptance of an incompatible office, by whomsoever the appointment or election might be made, absolutely determined the original office, leaving no shadow of title in the possessor, whose successor may be at once elected or appointed, neither *quo warranto* nor a motion being necessary." *Shell* v. *Cousins,* 77 Va. 328, 331.

Sections 32 and 56 of the Constitution do not conflict. Their areas of efficacy border but do not overlap.

The object sought to be accomplished by section 2-27 was, and is, to safeguard and protect the state's independent sovereignty by requiring strict and undivided allegiance to the duties and obligations of a public office by its incumbent. Its justification and the need for its enactment is traceable to and based on the principle that complete and unimpaired loyalty and fidelity are owed by a public officer to his trust and to the sovereign that created the office and made it available to the electee. Recogni-

tion of and adherence to that age-old truth are as important today as when the legislation was first adopted.

The long continued sanction of this act by its repeated re-enactment from time to time by the General Assembly, the positive application and enforcement of its mandate by this court, and the continued acquiescence in and adherence to its restrictions by the departments of the State government, impel the belief and confirm our conclusion that it does not infringe upon section 32 of the Constitution.

Section 64, Art. IV, Constitution of Virginia, provides:

"In all cases enumerated in the last section, and in every other case which, in its judgment, may be provided for by general laws, the General Assembly shall enact general laws. Any general law shall be subject to amendment or repeal, but the amendment or partial repeal thereof shall not operate directly or indirectly to enact, and shall not have the effect of the enactment of, a special, private, or local law. * * *"

There is no merit in the defendants' assertion that section 2-27 is special and private legislation, and thus violative of the above quoted part of section 64. It is legislation, general in character, and upon a subject well within the field of general legislation. The legislature by this enactment as determined in its judgment, which it had the express power to do, that the policy to be declared and the object sought to be attained may be dealt with and provided for by general law.

Section 2-27 applies alike to all officeholders. As it now appears, there is no inherent limitation or restriction therein which separates any persons, places or things of the same general class upon which it would otherwise operate but for such declared separation. *Martin* v. *Commonwealth*, 126 Va. 603, 102 S. E. 77, 724; *Boone* v. *Standard Acci. Ins. Co.*, 192 Va. 672, 66 S. E. (2d) 530.

Section 2-29, subsection 11, as amended by Acts of 1950, ch. 90, p. 101, fares not so well. By arbitrary classification, it undertakes to remove from the effect of section 2-27 a special, local and limited class of officeholders and government employees who, except for such unreasonable and arbitrary separation and exclusion, would fall under its ban. It thus necessarily limits, amends and partially repeals section 2-27, a general law. If given force and validity, the direct and immediate result would be to change, amend and so repeal section 2-27 as to arbitrarily

exclude from its general application a special and favored class of persons. Specifically classifying and excluding from its effect government employees who hold public offices in a county "having a population in excess of three hundred inhabitants per square mile, or of any city or county adjoining any county having a population in excess of two thousand inhabitants per square mile * * *" are unreasonable, unnatural and arbitrary classifications and exclusions. That character of legislation is forbidden and condemned by section 64. Its infirmity so patently appears upon its face that the usual presumption of constitutionality of a legislative act does not protect it. *County Board of Sup'rs* v. *American Trailer Co.,* 193 Va. 72, 68 S. E. (2d) 115.

Was the decree of May 8, 1952, final, and did it give to complainants the full relief to which they were entitled?

There was an actual controversy between the parties in the antagonistic assertion and denial of Dean's right to occupy the public office, perform the functions of a board member, and receive the salary from public funds to which a qualified incumbent was entitled.

The court treated the bill of complaint as a bill for a declaratory judgment under section 8-578, Code 1950, and the cause seems to have been proceeded in on the equity side of the court, which procedure was entirely proper. *Carr* v. *Union Church of Hopewell,* 186 Va. 411, 42 S. E. (2d) 840. Yet the subject matter of the bill involved both public and private rights and interests, and the relief sought was not limited to a mere declaration on the legality of the challenged legislation. The constitutionality of the act under which the incumbent asserted his right to occupy the office was in question, but his power to act as a board member, and thereby legislate for the public, and his right to receive and dispense public funds, were matters also at issue.

Upon decreeing section 2-27 constitutional and section 2-29, subsection 11, Acts of 1950, ch. 90, p. 101, invalid, the court sustained the act which declared the office vacant and struck down the legislation upon which Dean rested his right to occupy the office. Its decree thus decided the fundamental issue, adjudicated the principles of the case, and was appealable. Section 8-462 (2) (c), Code 1950. *Noel* v. *Noel,* 86 Va. 109, 9 S. E. 584; *Allen* v. *Parkey,* 154 Va. 739, 149 S. E. 615, 154 S. E. 919; *Mann* v. *Clowser,* 190 Va. 887, 59 S. E. (2d) 78; *Southwest Virginia Hospitals* v. *Lipps,* 193 Va. 191, 68 S. E. (2d) 82. Yet, in

so sustaining one act and invalidating the other, the court did not expressly declare the office vacant, prevent Dean from acting as a board member, or restrain the treasurer from continuing to pay him the salary due an occupant of the office. To the court's failure to so decree, the complainants assigned cross-error.

The relief contemplated and provided for by section 8-578 is not limited to a bare declaration of rights. In a proper case under that section and section 8-581, such consequential, other, and additional relief as is justified by the pleadings, and by the private or public rights and interests involved, may be awarded.

The declaratory judgment act is expressly declared to be remedial and has been so interpreted and administered. Section 8-585, Code 1950, *Yukon Pocahontas Coal Co.* v. *Ratliff,* 175 Va. 366, 8 S. E. (2d) 303; *Portsmouth Restaurant Ass'n* v. *Hotel, etc., Employees Alliance,* 183 Va. 757, 33 S. E. (2d) 218.

Award of the injunctive relief sought was not forbidden by section 8-583, Code 1950.

The decretal judgment entered by the circuit court was appealable, but it did not award the full relief to which the complainants were entitled, and it was thus not actually final, though declared to be.

"According to the uniform decisions of this court, a decree which disposes of the whole subject gives all the relief that is contemplated, and leaves nothing to be done by the court, is only to be regarded as final." *Ryan* v. *McLeod,* 32 Gratt. (73 Va.) 367, 376.

The factual allegations of the bill admitted by the demurrer, the rights and interests of the litigants and the public in the subject matter, and the relief prayed for, required that the office be declared vacant and that further payment of salary to Dean be forbidden. That was not accomplished by the decree of the trial court.

The cause is now before us for decision on its merits.

The bill of complaint does not *expressly* state that Dean was an employee of the Federal government on the first day of January, 1952, which was the day that he undertook to enter upon his duties as a board member. Yet, we think the allegations as a whole are sufficient to show that he was employed with the United States when he first assumed his duties on the board. That being true, he was from the first moment of January 1,

1952, incapable of holding office upon the board because of the provisions of section 2-27, Code 1950. Though legally elected, he never became a *de jure* officer because his incumbency died a-borning.

The decree of the circuit court, which declared section 2-27, Code 1950, constitutional and held subsection 11 of section 2-29, Code 1950, and subsection 11 thereof, as amended by Acts of 1950, ch. 90, p. 101, unconstitutional and void, will, to that extent, be affirmed. However, it will be supplemented by the entry here of a decree that will also declare the office claimed by Alan L. Dean on the county board vacant as of the first day of January, 1952, and will restrain the treasurer from paying any salary to him for service on the Board subsequent to the entry of that decree in this court on this, the 10th day of September, 1952.

As thus amended, the decree is affirmed.

*Amended and affirmed.*